1  **REQUEST FOR PRODUCTION NO. 22.:**

2      Please produce all documents which support DEFENDANT's

3  denial of Paragraph No. 51 of PLAINTIFF's Complaint.

4  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

5      To the extent it understands this request, Alltrade Tools

6  LLC will produce for inspection and copying all non-privileged

7  responsive documents, if any, which are in its possession, custody

8  or control and have not already been produced.

9  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 22:**

10      1.  ATT has not adequately responded to the Request and

11  its response is evasive.  ATT first objects on numerous grounds,

12  including privilege (without providing a privilege log), and then

13  states:

14          "...To the extent it understands the request
            ... ATT will produce ... documents it believes
15          are responsive."

16      2.  The qualifications are evasive, and are not

17  responsive to the request.

18  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 22:**

19      This Request asks for "all documents which support

20  DEFENDANT's denial of paragraph No. 51 of PLAINTIFF's Complaint."

21  ATLLC already has produced all non-privileged responsive documents

22  in its possession, custody or control.

23      Larin now complains about the qualifying language in

24  ATLLC's response, but there was no reason for Larin to file the

25  instant motion to compel.  If Larin wanted ATLLC to remove the

26  qualification from its response, Larin should have met and

27  conferred with ATLLC and made this request.  Had Larin done so,

28  ATLLC would have removed the qualifying language and this motion

1   would have been unnecessary.   Indeed, on November 2, 2007, ATLLC's

2   counsel advised Larin's counsel that "*all of the issues in*

3   *[Larin's] meet and confer letter and joint stipulations can be*

4   *resolved amicably, without the need to burden the court or waste*

5   *our client's money.   We are happy to meet with you, either in*

6   *person or on the telephone, to discuss each response that you take*

7   *issue with.*"   (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

8   forego the meet and confer process and file this motion in

9   retaliation for the several valid motions previously filed by

10  Defendants.

11  **REQUEST FOR PRODUCTION NO. 23.:**

12        Please produce all documents which support DEFENDANT's

13  contention in DEFENDANT's Answer that "Alltrade, Inc. ... no longer

14  conducts any business..." (Answer at 1:11-12).

15  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

16        To the extent it understands this request, Alltrade Tools

17  LLC will produce for inspection and copying all non-privileged

18  responsive documents, if any, which are in its possession, custody

19  or control and have not already been produced.

20  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 23:**

21        1.   ATT has not adequately responded to the Request and

22  its response is evasive.   ATT first objects on numerous grounds,

23  including privilege (without providing a privilege log), and then

24  states:

25        "...To the extent it understands the request
         ... ATT will produce ... documents it believes
26        are responsive."

27        2.   The qualifications are evasive, and are not

28  responsive to the request.

1  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 23:**

2          This Request asks for "all documents which support

3  DEFENDANT's contention in DEFENDANT's Answer that 'Alltrade, Inc. .

4  . . no longer conducts any business . . .'" ATLLC already has

5  produced all non-privileged responsive documents in its possession,

6  custody or control.

7          Larin now complains about the qualifying language in

8  ATLLC's response, but there was no reason for Larin to file the

9  instant motion to compel.  If Larin wanted ATLLC to remove the

10  qualification from its response, Larin should have met and

11  conferred with ATLLC and made this request.  Had Larin done so,

12  ATLLC would have removed the qualifying language and this motion

13  would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

14  counsel advised Larin's counsel that "*all of the issues in*

15  *[Larin's] meet and confer letter and joint stipulations can be*

16  *resolved amicably, without the need to burden the court or waste*

17  *our client's money.  We are happy to meet with you, either in*

18  *person or on the telephone, to discuss each response that you take*

19  *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

20  forego the meet and confer process and file this motion in

21  retaliation for the several valid motions previously filed by

22  Defendants.

23  **REQUEST FOR PRODUCTION NO. 24.:**

24          Please produce all documents which support DEFENDANT's

25  contention in DEFENDANT's Answer that "Alltrade Tools LLC sold

26  stools to Sam's club in individual boxes, which were resold at

27  Sam's Club retail stores..." (Answer at 3:23-24).

28  ///

1  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

2          To the extent it understands this request, Alltrade Tools

3  LLC will produce for inspection and copying all non-privileged

4  responsive documents, if any, which are in its possession, custody

5  or control and have not already been produced.

6  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 24:**

7          1.    ATT has not adequately responded to the Request and

8  its response is evasive.  ATT first objects on numerous grounds,

9  including privilege (without providing a privilege log), and then

10  states:

11             "...To the extent it understands the request
12             ... ATT will produce ... documents it believes
              are responsive."

13          2.    The qualifications are evasive, and are not

14  responsive to the request.

15  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 24:**

16          This Request asks for "all documents which support

17  DEFENDANT's contention in DEFENDANT's Answer that 'Alltrade Tools,

18  LLC sold stools to Sam's Club in individual boxes, which were

19  resold at Sam's Club retail stores. . ."  ATLLC already has

20  produced all non-privileged responsive documents in its possession,

21  custody or control.

22          Larin now complains about the qualifying language in

23  ATLLC's response, but there was no reason for Larin to file the

24  instant motion to compel.  If Larin wanted ATLLC to remove the

25  qualification from its response, Larin should have met and

26  conferred with ATLLC and made this request.  Had Larin done so,

27  ATLLC would have removed the qualifying language and this motion

28  would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

1  counsel advised Larin's counsel that "*all of the issues in*

2  *[Larin's] meet and confer letter and joint stipulations can be*

3  *resolved amicably, without the need to burden the court or waste*

4  *our client's money.  We are happy to meet with you, either in*

5  *person or on the telephone, to discuss each response that you take*

6  *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

7  forego the meet and confer process and file this motion in

8  retaliation for the several valid motions previously filed by

9  Defendants.

10  **REQUEST FOR PRODUCTION NO. 25.:**

11          Please produce all documents which support DEFENDANT's

12  first affirmative defense (Answer at 7:16-19).

13  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

14          To the extent it understands this request, Alltrade Tools

15  LLC will produce for inspection and copying all non-privileged

16  responsive documents, if any, which are in its possession, custody

17  or control and have not already been produced.

18  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 25:**

19          1.   ATT has not adequately responded to the Request and

20  its response is evasive.  ATT first objects on numerous grounds,

21  including privilege (without providing a privilege log), and then

22  states:

23                  "...To the extent it understands the request
                    ... ATT will produce ... documents it believes
24                  are responsive."

25          2.   The qualifications are evasive, and are not

26  responsive to the request.

27  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 25:**

28          This Request asks for "all documents which support

1  DEFENDANT's first affirmative defense." ATLLC already has produced

2  all non-privileged responsive documents in its possession, custody

3  or control.

4       Larin now complains about the qualifying language in

5  ATLLC's response, but there was no reason for Larin to file the

6  instant motion to compel. If Larin wanted ATLLC to remove the

7  qualification from its response, Larin should have met and

8  conferred with ATLLC and made this request. Had Larin done so,

9  ATLLC would have removed the qualifying language and this motion

10 would have been unnecessary. Indeed, on November 2, 2007, ATLLC's

11 counsel advised Larin's counsel that "*all of the issues in*

12 *[Larin's] meet and confer letter and joint stipulations can be*

13 *resolved amicably, without the need to burden the court or waste*

14 *our client's money. We are happy to meet with you, either in*

15 *person or on the telephone, to discuss each response that you take*

16 *issue with.*" (Ruga Decl., ¶ 4, Ex. B.) Larin, however, chose to

17 forego the meet and confer process and file this motion in

18 retaliation for the several valid motions previously filed by

19 Defendants.

20 **REQUEST FOR PRODUCTION NO. 26.:**

21      Please produce all documents which support DEFENDANT's

22 second affirmative defense (Answer at 7:20-24).

23 **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

24      To the extent it understands this request, Alltrade Tools

25 LLC will produce for inspection and copying all non-privileged

26 responsive documents, if any, which are in its possession, custody

27 or control and have not already been produced.

28 ///

1  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 26:**

2          1.   ATT has not adequately responded to the Request and

3  its response is evasive.  ATT first objects on numerous grounds,

4  including privilege (without providing a privilege log), and then

5  states:

6                  "...To the extent it understands the request
                  ... ATT will produce ... documents it believes
7                  are responsive."

8          2.   The qualifications are evasive, and are not

9  responsive to the request.

10 **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 26:**

11          This Request asks for "all documents which support

12 DEFENDANT's second affirmative defense."  ATLLC already has

13 produced all non-privileged responsive documents in its possession,

14 custody or control.

15          Larin now complains about the qualifying language in

16 ATLLC's response, but there was no reason for Larin to file the

17 instant motion to compel.  If Larin wanted ATLLC to remove the

18 qualification from its response, Larin should have met and

19 conferred with ATLLC and made this request.  Had Larin done so,

20 ATLLC would have removed the qualifying language and this motion

21 would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

22 counsel advised Larin's counsel that "*all of the issues in*

23 *[Larin's] meet and confer letter and joint stipulations can be*

24 *resolved amicably, without the need to burden the court or waste*

25 *our client's money.  We are happy to meet with you, either in*

26 *person or on the telephone, to discuss each response that you take*

27 *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

28 forego the meet and confer process and file this motion in

1  retaliation for the several valid motions previously filed by

2  Defendants.

3  **REQUEST FOR PRODUCTION NO. 27.:**

4         Please produce all documents which support DEFENDANT's

5  third affirmative defense (Answer at 7:24-8:1).

6  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

7         To the extent it understands this request, Alltrade Tools

8  LLC will produce for inspection and copying all non-privileged

9  responsive documents, if any, which are in its possession, custody

10  or control and have not already been produced.

11  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 27:**

12         1.   ATT has not adequately responded to the Request and

13  its response is evasive.  ATT first objects on numerous grounds,

14  including privilege (without providing a privilege log), and then

15  states:

16              "...To the extent it understands the request
                ... ATT will produce ... documents it believes
17              are responsive."

18         2.   The qualifications are evasive, and are not

19  responsive to the request.

20  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 27:**

21         This Request asks for "all documents which support

22  DEFENDANT's third affirmative defense."  ATLLC already has produced

23  all non-privileged responsive documents in its possession, custody

24  or control.

25         Larin now complains about the qualifying language in

26  ATLLC's response, but there was no reason for Larin to file the

27  instant motion to compel.  If Larin wanted ATLLC to remove the

28  qualification from its response, Larin should have met and

1   conferred with ATLLC and made this request.  Had Larin done so,

2   ATLLC would have removed the qualifying language and this motion

3   would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

4   counsel advised Larin's counsel that "*all of the issues in*

5   *[Larin's] meet and confer letter and joint stipulations can be*

6   *resolved amicably, without the need to burden the court or waste*

7   *our client's money.  We are happy to meet with you, either in*

8   *person or on the telephone, to discuss each response that you take*

9   *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

10  forego the meet and confer process and file this motion in

11  retaliation for the several valid motions previously filed by

12  Defendants.

13  **REQUEST FOR PRODUCTION NO. 28.:**

14          Please produce all documents which support DEFENDANT's

15  fourth affirmative defense (Answer at 8:2-5).

16  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

17          To the extent it understands this request, Alltrade Tools

18  LLC will produce for inspection and copying all non-privileged

19  responsive documents, if any, which are in its possession, custody

20  or control and have not already been produced.

21  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 28:**

22          1.   ATT has not adequately responded to the Request and

23  its response is evasive.  ATT first objects on numerous grounds,

24  including privilege (without providing a privilege log), and then

25  states:

26          "...To the extent it understands the request
            ... ATT will produce ... documents it believes
27          are responsive."

28          2.   The qualifications are evasive, and are not

1  responsive to the request.

2  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 28:**

3        This Request asks for "all documents which support

4  DEFENDANT's fourth affirmative defense."   ATLLC already has

5  produced all non-privileged responsive documents in its possession,

6  custody or control.

7        Larin now complains about the qualifying language in

8  ATLLC's response, but there was no reason for Larin to file the

9  instant motion to compel.   If Larin wanted ATLLC to remove the

10  qualification from its response, Larin should have met and

11  conferred with ATLLC and made this request.   Had Larin done so,

12  ATLLC would have removed the qualifying language and this motion

13  would have been unnecessary.   Indeed, on November 2, 2007, ATLLC's

14  counsel advised Larin's counsel that "*all of the issues in*

15  *[Larin's] meet and confer letter and joint stipulations can be*

16  *resolved amicably, without the need to burden the court or waste*

17  *our client's money.   We are happy to meet with you, either in*

18  *person or on the telephone, to discuss each response that you take*

19  *issue with.*"   (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

20  forego the meet and confer process and file this motion in

21  retaliation for the several valid motions previously filed by

22  Defendants.

23  **REQUEST FOR PRODUCTION NO. 29.:**

24        Please produce all documents which support DEFENDANT's

25  fifth affirmative defense (Answer at 8:6-9).

26  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

27        To the extent it understands this request, Alltrade Tools

28  LLC will produce for inspection and copying all non-privileged

responsive documents, if any, which are in its possession, custody or control and have not already been produced.

**ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 29:**

    1.   ATT has not adequately responded to the Request and its response is evasive.  ATT first objects on numerous grounds, including privilege (without providing a privilege log), and then states:

> "...To the extent it understands the request ... ATT will produce ... documents it believes are responsive."

    2.   The qualifications are evasive, and are not responsive to the request.

**ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 29:**

This Request asks for "all documents which support DEFENDANT's fifth affirmative defense."  ATLLC already has produced all non-privileged responsive documents in its possession, custody or control.

Larin now complains about the qualifying language in ATLLC's response, but there was no reason for Larin to file the instant motion to compel.  If Larin wanted ATLLC to remove the qualification from its response, Larin should have met and conferred with ATLLC and made this request.  Had Larin done so, ATLLC would have removed the qualifying language and this motion would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's counsel advised Larin's counsel that *all of the issues in [Larin's] meet and confer letter and joint stipulations can be resolved amicably, without the need to burden the court or waste our client's money.  We are happy to meet with you, either in person or on the telephone, to discuss each response that you take*

1  *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

2  forego the meet and confer process and file this motion in

3  retaliation for the several valid motions previously filed by

4  Defendants.

5  **REQUEST FOR PRODUCTION NO. 30.:**

6          Please produce all documents which support DEFENDANT's

7  sixth affirmative defense (Answer at 8:10-13).

8  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

9          To the extent it understands this request, Alltrade Tools

10 LLC will produce for inspection and copying all non-privileged

11 responsive documents, if any, which are in its possession, custody

12 or control and have not already been produced.

13 **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 30:**

14         1.   ATT has not adequately responded to the Request and

15 its response is evasive.  ATT first objects on numerous grounds,

16 including privilege (without providing a privilege log), and then

17 states:

18              "...To the extent it understands the request
                ... ATT will produce ... documents it believes
19              are responsive."

20         2.   The qualifications are evasive, and are not

21 responsive to the request.

22 **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 30:**

23         This Request asks for "all documents which support

24 DEFENDANT's sixth affirmative defense."  ATLLC already has produced

25 all non-privileged responsive documents in its possession, custody

26 or control.

27         Larin now complains about the qualifying language in

28 ATLLC's response, but there was no reason for Larin to file the

1   instant motion to compel.  If Larin wanted ATLLC to remove the

2   qualification from its response, Larin should have met and

3   conferred with ATLLC and made this request.  Had Larin done so,

4   ATLLC would have removed the qualifying language and this motion

5   would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

6   counsel advised Larin's counsel that "*all of the issues in*

7   *[Larin's] meet and confer letter and joint stipulations can be*

8   *resolved amicably, without the need to burden the court or waste*

9   *our client's money.  We are happy to meet with you, either in*

10   *person or on the telephone, to discuss each response that you take*

11   *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

12   forego the meet and confer process and file this motion in

13   retaliation for the several valid motions previously filed by

14   Defendants.

15   **REQUEST FOR PRODUCTION NO. 31.:**

16        Please produce all documents which support DEFENDANT's

17   seventh affirmative defense (Answer at 8:14-17).

18   **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

19        To the extent it understands this request, Alltrade Tools

20   LLC will produce for inspection and copying all non-privileged

21   responsive documents, if any, which are in its possession, custody

22   or control and have not already been produced.

23   **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 31:**

24        Alltrade Tools LLC objects to this request to the extent

25   that the documents sought are confidential or subject to the

26   attorney-client, work-product, or other applicable privileges.

27   Alltrade Tools LLC also objects to this request to the extent that

28   it is vague and ambiguous, overly broad, unduly burdensome, and

1 | harassing.

2 |     Subject to and without waiving these and any other

3 | objections, and to the extent it understands this request, Alltrade

4 | Tools LLC will produce for inspection and copying documents that

5 | Alltrade Tools LLC believes are responsive to this request.

6 | **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 31:**

7 |     This Request asks for "all documents which support

8 | DEFENDANT's seventh affirmative defense."  ATLLC already has

9 | produced all non-privileged responsive documents in its possession,

10 | custody or control.

11 |     Larin now complains about the qualifying language in

12 | ATLLC's response, but there was no reason for Larin to file the

13 | instant motion to compel.  If Larin wanted ATLLC to remove the

14 | qualification from its response, Larin should have met and

15 | conferred with ATLLC and made this request.  Had Larin done so,

16 | ATLLC would have removed the qualifying language and this motion

17 | would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

18 | counsel advised Larin's counsel that "*all of the issues in*

19 | *[Larin's] meet and confer letter and joint stipulations can be*

20 | *resolved amicably, without the need to burden the court or waste*

21 | *our client's money.  We are happy to meet with you, either in*

22 | *person or on the telephone, to discuss each response that you take*

23 | *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)  Larin, however, chose to

24 | forego the meet and confer process and file this motion in

25 | retaliation for the several valid motions previously filed by

26 | Defendants.

27 | **REQUEST FOR PRODUCTION NO. 32.:**

28 |     Please produce all documents which support DEFENDANT's

1 | eighth affirmative defense (Answer at 8:18-21).

2 | **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

3 |          To the extent it understands this request, Alltrade Tools

4 | LLC will produce for inspection and copying all non-privileged

5 | responsive documents, if any, which are in its possession, custody

6 | or control and have not already been produced.

7 | **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 32:**

8 |          Alltrade Tools LLC objects to this request to the extent

9 | that the documents sought are confidential or subject to the

10 | attorney-client, work-product, or other applicable privileges.

11 | Alltrade Tools LLC also objects to this request to the extent that

12 | it is vague and ambiguous, overly broad, unduly burdensome, and

13 | harassing.

14 |          Subject to and without waiving these and any other

15 | objections, and to the extent it understands this request, Alltrade

16 | Tools LLC will produce for inspection and copying documents that

17 | Alltrade Tools LLC believes are responsive to this request.

18 | **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 32:**

19 |          This Request asks for "all documents which support

20 | DEFENDANT's eighth affirmative defense."  ATLLC already has

21 | produced all non-privileged responsive documents in its possession,

22 | custody or control.

23 |          Larin now complains about the qualifying language in

24 | ATLLC's response, but there was no reason for Larin to file the

25 | instant motion to compel.  If Larin wanted ATLLC to remove the

26 | qualification from its response, Larin should have met and

27 | conferred with ATLLC and made this request.  Had Larin done so,

28 | ATLLC would have removed the qualifying language and this motion

1 would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's

2 counsel advised Larin's counsel that "*all of the issues in*

3 *[Larin's] meet and confer letter and joint stipulations can be*

4 *resolved amicably, without the need to burden the court or waste*

5 *our client's money.  We are happy to meet with you, either in*

6 *person or on the telephone, to discuss each response that you take*

7 *issue with*."  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

8 forego the meet and confer process and file this motion in

9 retaliation for the several valid motions previously filed by

10 Defendants.

11 **REQUEST FOR PRODUCTION NO. 33.:**

12 Please produce all documents which support DEFENDANT's

13 ninth affirmative defense (Answer at 8:22-28).

14 **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

15 To the extent it understands this request, Alltrade Tools

16 LLC will produce for inspection and copying all non-privileged

17 responsive documents, if any, which are in its possession, custody

18 or control and have not already been produced.

19 **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 33:**

20 Alltrade Tools LLC objects to this request to the extent

21 that the documents sought are confidential or subject to the

22 attorney-client, work-product, or other applicable privileges.

23 Alltrade Tools LLC also objects to this request to the extent that

24 it is vague and ambiguous, overly broad, unduly burdensome, and

25 harassing.

26 Subject to and without waiving these and any other

27 objections, and to the extent it understands this request, Alltrade

28 Tools LLC will produce for inspection and copying documents that

1  Alltrade Tools LLC believes are responsive to this request.

2  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 33:**

3  This Request asks for "all documents which support
4  DEFENDANT's ninth affirmative defense."  ATLLC already has produced
5  all non-privileged responsive documents in its possession, custody
6  or control.

7  Larin now complains about the qualifying language in
8  ATLLC's response, but there was no reason for Larin to file the
9  instant motion to compel.  If Larin wanted ATLLC to remove the
10  qualification from its response, Larin should have met and
11  conferred with ATLLC and made this request.  Had Larin done so,
12  ATLLC would have removed the qualifying language and this motion
13  would have been unnecessary.  Indeed, on November 2, 2007, ATLLC's
14  counsel advised Larin's counsel that "*all of the issues in*
15  *[Larin's] meet and confer letter and joint stipulations can be*
16  *resolved amicably, without the need to burden the court or waste*
17  *our client's money.  We are happy to meet with you, either in*
18  *person or on the telephone, to discuss each response that you take*
19  *issue with.*"  (Ruga Decl., ¶ 4, Ex. B.)  Larin, however, chose to
20  forego the meet and confer process and file this motion in
21  retaliation for the several valid motions previously filed by
22  Defendants.

23  **REQUEST FOR PRODUCTION NO. 34.:**

24  Please produce all documents which support DEFENDANT's
25  tenth affirmative defense (Answer at 9:1-5).

26  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

27  To the extent it understands this request, Alltrade Tools
28  LLC will produce for inspection and copying all non-privileged

1  responsive documents, if any, which are in its possession, custody

2  or control and have not already been produced.

3  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 34:**

4          Alltrade Tools LLC objects to this request to the extent

5  that the documents sought are confidential or subject to the

6  attorney-client, work-product, or other applicable privileges.

7  Alltrade Tools LLC also objects to this request to the extent that

8  it is vague and ambiguous, overly broad, unduly burdensome, and

9  harassing.

10         Subject to and without waiving these and any other

11 objections, and to the extent it understands this request, Alltrade

12 Tools LLC will produce for inspection and copying documents that

13 Alltrade Tools LLC believes are responsive to this request.

14 **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 34:**

15         This Request asks for "all documents which support

16 DEFENDANT's tenth affirmative defense."   ATLLC already has produced

17 all non-privileged responsive documents in its possession, custody

18 or control.

19         Larin now complains about the qualifying language in

20 ATLLC's response, but there was no reason for Larin to file the

21 instant motion to compel.   If Larin wanted ATLLC to remove the

22 qualification from its response, Larin should have met and

23 conferred with ATLLC and made this request.   Had Larin done so,

24 ATLLC would have removed the qualifying language and this motion

25 would have been unnecessary.   Indeed, on November 2, 2007, ATLLC's

26 counsel advised Larin's counsel that "*all of the issues in*

27 *[Larin's] meet and confer letter and joint stipulations can be*

28 *resolved amicably, without the need to burden the court or waste*

1  *our client's money.  We are happy to meet with you, either in*

2  *person or on the telephone, to discuss each response that you take*

3  *issue with."*  (Ruga Decl., ¶ 4, Ex. B.)   Larin, however, chose to

4  forego the meet and confer process and file this motion in

5  retaliation for the several valid motions previously filed by

6  Defendants.

7  **REQUEST FOR PRODUCTION NO. 35.:**

8       Please produce all documents which support DEFENDANT's

9  first counter-claim for relief (Counterclaim at 10:1-11:4).

10  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

11       Alltrade Tools LLC objects to this request on the grounds

12  that the documents requested are in Plaintiff's custody or control,

13  and/or are equally available to Plaintiff.

14  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 35:**

15       ATT's response is evasive.  It states that the same

16  documents are available to LARIN as to ATT, yet ATT does not

17  identify the documents.

18  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 35:**

19       This Request asks for "all documents which support

20  DEFENDANT's first counter-claim for relief."  ATLLC's first

21  counter-claim is for "cancellation of trademark registration

22  pursuant to 15 U.S.C. § 1119" and is premised on the ground that

23  Larin's stool is functional and therefore not entitled to trademark

24  protection."  Any non-privileged documents supporting this claim,

25  therefore, are in the possession of Larin, not ATLLC.  Put

26  differently, ATLLC has no non-privileged documents responsive to

27  this Request.

28       Larin now complains that ATLLC did not identify the

1  documents in Larin's possession, but there was no reason for Larin

2  to file the instant motion to compel.   If Larin wanted ATLLC to

3  identify the documents, Larin should have met and conferred with

4  ATLLC and made this request.   Had Larin done so, ATLLC would have

5  complied and this motion would have been unnecessary.   Indeed, on

6  November 2, 2007, ATLLC's counsel advised Larin's counsel that "*all*

7  *of the issues in [Larin's] meet and confer letter and joint*

8  *stipulations can be resolved amicably, without the need to burden*

9  *the court or waste our client's money.   We are happy to meet with*

10  *you, either in person or on the telephone, to discuss each response*

11  *that you take issue with.*"   (Ruga Decl., ¶ 4, Ex. B.)   Larin,

12  however, chose to forego the meet and confer process and file this

13  motion in retaliation for the several valid motions previously

14  filed by Defendants.

15  **REQUEST FOR PRODUCTION NO. 36.:**

16        Please produce all documents which support DEFENDANT's

17  second counter-claim for relief (Counterclaim at 11:5-12:6).

18  **DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

19        Alltrade Tools LLC objects to this request on the grounds

20  that the documents requested are in Plaintiff's custody or control,

21  and/or are equally available to Plaintiff.

22  **ARGUMENT IN SUPPORT OF REQUEST FOR PRODUCTION NO. 36:**

23        ATT's response is evasive.   It states that the same

24  documents are available to LARIN as to ATT, yet ATT does not

25  identify the documents.

26  ///

27  ///

28  ///

1  **ARGUMENT IN OPPOSITION TO REQUEST FOR PRODUCTION NO. 36:**

2          This Request asks for "all documents which support

3  DEFENDANT's second counter-claim for relief."  ATLLC's second

4  counter-claim is for "cancellation of trademark registration

5  pursuant to 15 U.S.C. §§ 1064 and 1119" and is premised on the

6  ground that Larin made fraudulent representations to the USPTO.

7  Any non-privileged documents supporting this claim, therefore, are

8  in the possession of Larin, not ATLLC.  Put differently, ATLLC has

9  no non-privileged documents responsive to this Request.

10          Larin now complains that ATLLC did not identify the

11  documents in Larin's possession, but there was no reason for Larin

12  to file the instant motion to compel.  If Larin wanted ATLLC to

13  identify the documents, Larin should have met and conferred with

14  ATLLC and made this request.  Had Larin done so, ATLLC would have

15  complied and this motion would have been unnecessary.  Indeed, on

16  November 2, 2007, ATLLC's counsel advised Larin's counsel that "*all*

17  *of the issues in [Larin's] meet and confer letter and joint*

18  *stipulations can be resolved amicably, without the need to burden*

19  *the court or waste our client's money.  We are happy to meet with*

20  *you, either in person or on the telephone, to discuss each response*

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    *that you take issue with.*"   (Ruga Decl., ¶ 4, Ex. B.)   Larin,

2    however, chose to forego the meet and confer process and file this

3    motion in retaliation for the several valid motions previously

4    filed by Defendants.

5

6                                    Respectfully Jointly Submitted,

7                                    LAW OFFICES OF ALLEN HYMAN

8

9    DATED: November 12, 2007        By:

10                                       Allen Hyman, Esq.
                                         Attorneys for Plaintiff
11                                       LARIN CORPORATION

12                                   STEPTOE & JOHNSON

13

14   DATED: November 13, 2007        By:

15                                       Dylan Ruga, Esq.
                                         Attorneys for Defendants
16                                       ALLTRADE TOOLS, LLC, ALLTRADE,
                                         INC., AND ANDRE LIVIAN

17

18

19

20

21

22

23

24

25

26

27

28

ALLEN HYMAN, ESQ. (CBN: 73371)
CHRISTINE COVERDALE, ESQ. (CBN: 195635)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, California 91602
P: (818) 763-6289 or (323) 877-3405
F: (818) 763-4676
Email: lawoffah@aol.com

Attorneys for Plaintiff,
LARIN CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARIN CORPORATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLTRADE, INC., a California corporation; ALLTRADE TOOLS, LLC, a California limited liability company; ANDRE LIVIAN, an individual,<br><br>    Defendants.<br>  | Case No. CV 06-1394 ODW (OPx)<br><br>**DECLARATION OF ALLEN HYMAN IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES AND PRODUCTION OF DOCUMENTS WITH REGARD TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ALLTRADE TOOLS, LLC; AND FOR SANCTIONS**<br><br>Motion To Compel<br>Date: December 4, 2007<br>Time: 9:30 a.m.<br>Place: Courtroom 3, the Honorable<br>   U.S. District Court Judge<br>   Oswald Parada, Presiding<br><br>DISCOVERY CUTOFF<br>DATE: February 4, 2008<br><br>PRETRIAL CONFERENCE<br>DATE: March 24, 2008<br><br>TRIAL<br>DATE: April 22, 2008 |

///

///

///

///

S:\PC7\LARIN CORP\DECAH110907.wpd

1        I, Allen Hyman, declare as follows:

2        1.   I have personal knowledge of the facts set forth in

3    this declaration, and I could and would testify as to these facts

4    if called upon to do so.

5                    **The Nature Of The Case**

6        2.   Attached to this declaration as Exhibit No. 1, is a

7    copy of the complaint (seventeen (17) pages without exhibits).   The

8    complaint alleges (Ex. No. 1, Paras. 12-20) that during 2001 and

9    2002, plaintiff LARIN created a unique stool, which LARIN sold

10   during 2002 to 2006 (and presently) to wholesalers in the LARIN

11   designed box (Ex. No. 2) as shipped to wholesalers, which LARIN

12   stool in its designed box was sold at retail, which box included

13   specific LARIN designed colors, shadings of colors, specific

14   content of pictures, format, and lettering (LARIN box, Ex. No. 2).

15       3.   Exhibit No. 2 are three color photographs of the

16   LARIN box in which the LARIN stool was packaged and sold at

17   wholesale and at retail from 2002 to the present.   As of 2006,

18   LARIN had sold a considerable number of its product throughout the

19   United States at wholesale, resold in the LARIN box at retail.

20       4.   The Complaint (Ex. No. 1), alleges (Paras. 27-35),

21   that commencing in 2006, defendant Alltrade copied the LARIN

22   product, (created an inferior version, identical stool design), and

23   ALLTRADE specifically copied the precise LARIN art work, colors,

24   format, lettering, display and content of photographs of the LARIN

25   box (Ex. No. 2) in which ALLTRADE sold to the same retail stores

26   for resale as LARIN.   Exhibit No. 3 are three color photographs of

27   the ALLTRADE box, which ALLTRADE commenced selling in 2006 (with

28   LARIN's complaint Ex. No. 1 alleging unfair competition, complaint

1   Paras. 27-29).

2                    **First Set of Requests For Production to ALLTRADE**

3              5.    On June 14, 2007, LARIN served on Alltrade Tools,

4   LLC ("ALLTRADE") the First Set of Requests For Production of

5   Documents, Nos. 1-36 (attached as Exhibit No. 4).

6                    **ALLTRADE's Responses to LARIN's First Set Of**

7                         **Requests For Production**

8              6.    On June 15, 2007, ALLTRADE served its Responses and

9   Objections (attached as Exhibit No. 5) to LARIN's First Set of

10  Requests For Production, Nos. 1-36 (Ex. No. 4).

11                          **Meet And Confer**

12             7.    Larin had served the identical set of Requests for

13  Production on Alltrade, Inc., and received the identical set of

14  responses for Alltrade Inc.

15             8.    Alltrade's responses interposed only objections, and

16  Alltrade produced a total of 196 pages of documents, none of which

17  indicated the cost of or manufacturing cost of the Alltrade product

18  to Alltrade, none of which indicated any documents with regard to

19  the Alltrade box, and none of which indicated any documents

20  indicating the design or creation of the Alltrade stool.

21             9.    On October 30, 2007, I sent a letter to Mr. Ruga

22  (attached as Exhibit No. 6), indicating the deficiencies as to the

23  responses to Alltrade Inc., which were identical to Alltrade LLC.

24             10.   On October 31, 2007, Mr. Ruga and I discussed these

25  matters, and I indicated that the deficiencies applied to both

26  Alltrade, Inc., and Alltrade Tools, LLC's responses, which were

27  identical, and I was intending to prepare joint stipulations as to

28  both sets as to both companies.

1      11.   On October 31, 2007, Mr. Ruga stated to me that

2   Alltrade, Inc., was not an operational company, was a holding

3   company, that it did not conduct any manufacturing or sales, or

4   ongoing business, and was in essence a dormant company, and had not

5   been involved in any activities with regard to the Alltrade stool

6   or box.

7      12.   As a result of Mr. Ruga's representations, I did not

8   present joint stipulations to Mr. Ruga with regard to the Alltrade,

9   Inc., responses.

10     13.   On October 31, 2007, Mr. Ruga and I had an extensive

11  meet and confer which is reflected in my letter of November 2, 2007

12  (attached as Exhibit No. 7), where I reflect that Mr. Ruga

13  represented that Alltrade, Inc.:

14          "...is not an operating company, apparently was
            not in business during 2004 to the present,
15          does not purchase, manufacture or sell any
            items and is in essence a holding company with
16          apparently no employees..." (Ex. No. 7 at page
            2).
17
            14.   My November 2, 2007 letter (Ex. No. 7), reflects
18
    that Mr. Ruga requested that I not proceed with the motion, but Mr.
19
    Ruga did not indicate what precisely Mr. Ruga would undertake to
20
    avoid a motion.
21
            15.   I did not state to Mr. Ruga that if Mr. Ruga
22
    withdrew his present motion to compel, that I would not pursue my
23
    motion.   I did indicate that Mr. Ruga had proceeded with his motion
24
    to compel despite the fact that I had provided to him supplemental
25
    responses, and that Mr. Ruga wishes me to undertake the same, to
26
    wait until Mr. Ruga provides supplemental responses, when Mr. Ruga
27
    would not provide the same accommodation for this office.
28

### Request For Sanctions

16.   Plaintiff will have incurred a total of $3,750.00 in attorneys' fees relating to the preparation of the Joint Stipulation and Motion to Compel.

17.   The Plaintiff was billed for a total of 11.25 hours for: 1) my preparation of the Joint Stipulation (6 hours); 2) my preparation of the Notice of Motion and Motion (.5 hours); and 3) this declaration (1 hour).

18.   In addition, I will be forced to expend at least another 3 hours in traveling to and from Riverside, California for the hearing on the Motion to Compel and another 2 hours in preparing a Supplemental Memorandum.

19.   My hourly attorneys' fees rate charged to the Plaintiff in this case is $300.00 per hour.  My hourly rate is customary in this community for persons of similar qualifications and experience.  I have been a member of the California bar for more than twenty-five (25) years.

20.   The total amount of attorneys' fees and costs incurred by the Plaintiff with regard to the Motion to Compel is 12.5 hours, in the total amount of $3,750.00.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on November 12, 2007, in North Hollywood, California.

_____
Allen Hyman

1  ALLEN HYMAN, ESQ. (CBN: 73371)
   CHRISTINE COVERDALE, ESQ. (CBN: 195635)
2  LAW OFFICES OF ALLEN HYMAN
   10737 Riverside Drive
3  North Hollywood, California 91602
   P: (818) 763-6289 or (323) 877-3405
4  F: (818) 763-4676
   Email: lawoffah@aol.com
5
   Attorneys for Plaintiff:
6  LARIN CORPORATION
7
8
                    UNITED STATES DISTRICT COURT
9
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
11
12 LARIN CORPORATION,                )   Case No.
                                     )
13              Plaintiff,           )   COMPLAINT FOR:
                                     )
14       v.                          )   (1) FEDERAL UNFAIR COMPETITION
                                     )       VIOLATION OF THE LANHAM ACT
15 ALLTRADE, INC., a California      )       SECTION 43(a);
   corporation; ALLTRADE TOOLS,      )
16 LLC, a California limited         )   (2) COMMON LAW UNFAIR
   liability company; ANDRE         )       COMPETITION; AND
17 LIVIAN, an individual,            )
                                     )   (3) VIOLATION OF CALIFORNIA
18              Defendants.          )       BUSINESS & PROFESSIONS CODE
                                     )       §§ 17200 AND 17500
19 _____  )
                                     )   (DEMAND FOR JURY TRIAL)
20
21
22       Plaintiff Larin Corporation ("LARIN") alleges in its
23 complaint as follows:
24 ///
25 ///
26 ///
27 ///
28 ///

S.\PC3\LARIN CORPORATION\COMPLAINT.121406.wpd        -1-

EXHIBIT

1

6

I.

### First Claim For Relief

(Federal Unfair Competition)

(Against All Defendants)

### Jurisdiction

1.   LARIN asserts as its first claim, Federal Unfair Competition (Section 43(a) of the Lanham Act), 15 U.S.C. 1125(a). Federal court subject matter jurisdiction is provided by 28 U.S.C. 1338(b), New West Corporation v. NYM Company of California, Inc., 595 F.2d, 1194, 1198 (9th Cir. 1979), "Jurisdiction of the district court was based upon 15 U.S.C. 1121 and an alleged violation of § 43 of the Lanham Act."   Id. at 1198.   Pursuant to 28 U.S.C. 1367, this court has supplemental jurisdiction over plaintiff LARIN's two (2) additional state law claims for common law, and statutory unfair competition.

2.   Title 15 U.S.C. 1125(a) provides in part:

> "...any person "...in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to origin, (or) sponsorship ... shall be liable in a civil action by any person who believes that he or she is or is likely to be caused damages by such act."   (Emphasis added)

### The Parties

3.   Plaintiff LARIN is a July 20, 1989 California corporation, which principal place of business is located at 2029 Business Parkway, Ontario, California 91761.

///

7

1          4.   Defendant Alltrade, Inc., ("ALLTRADE-INC."), is a

2     March 13, 1979 California corporation, which principal place of

3     business is located at 1431 Via Plata, Long Beach, California

4     90801.

5          5.   Defendant Alltrade Tools, LLC (ALLTRADE-LLC), is a

6     May 24, 2005 California limited liability company, which principal

7     place of business is located at 1431 Via Plata, Long Beach,

8     California 90801.

9          6.   Defendant Andre Livian ("LIVIAN") is on information

10    and belief, an officer and director of defendants ALLTRADE-INC.,

11    and ALLTRADE-LLC.  Plaintiff LARIN asserts that defendant LIVIAN

12    directed and supervised the acts of unfair competition alleged in

13    this complaint.

14         7.   Plaintiff LARIN collectively refers to the three (3)

15    defendants: (1)  ALLTRADE-INC.; (2) ALLTRADE-LLC; and (3) LIVIAN as

16    "DEFENDANTS."

17         8.   Plaintiff LARIN asserts on information and belief,

18    that in committing the acts of unfair competition alleged in this

19    complaint, that each of the DEFENDANTS acted as either the agent

20    of, or was the principal of each of the other DEFENDANTS, and that

21    each of the three (3) DEFENDANTS is therefore responsible for the

22    unlawful acts as alleged, under the doctrine of respondient

23    superior.

24         9.   Plaintiff LARIN may seek leave to add as additional

25    defendants, if discovery discloses their participation in the

26    unlawful acts alleged, two (2) entities not presently named as

27    defendants: (a) Alltrade Holdings LLC, ("ALLTRADE-HOLLC"), a May

28    20, 2002 California limited liability company located at 1421 Via

1    Plata, Long Beacn, California; and (b) Dodum Export Limited

2    ("DODUM"), a July 1, 2003 California corporation, which principal

3    place of business is located at "10/F, 924-926 Cheung Sha Wan Road,

4    Lawloon, Hong Kong, whose agent of service of process is defendant

5    LIVIAN.

6                        **Nature Of Plaintiff LARIN**

7           10.   Plaintiff LARIN manufactures and sells a variety of

8    products including: lifting equipment ("jacks"); lighting

9    equipment; ATV/Motorcycle jacks; towing accessories; tools; and

10   other devices, including the "pneumatic stool" which advertising

11   and promotion is the subject of this complaint (a copy of the home

12   web page of plaintiff LARIN, with a photograph of the LARIN

13   building in Ontario, California, is attached to this complaint as

14   Exhibit No. 1).

15          11.   During 2001 and 2002, LARIN at considerable cost and

16   expense, designed, and in 2002, LARIN commenced to manufacture and

17   sell to retailers in the United States in interstate commerce a

18   product LARIN identified, and presently identifies as the "LARIN

19   Pneumatic Garage Seat" or "Garage Stool," and which at times has

20   been advertised, during 2002 to the present, as the "LARIN

21   Pneumatic Biker Seat."  Photographs of the LARIN "Seat" is attached

22   to this complaint as Exhibit No. 2.  Three (3) 2003 to 2005

23   photograph advertisements of the "LARIN Pneumatic Biker Seat" are

24   attached to this complaint as Exhibit No. 3.

25                    **The LARIN Sales Box (Container)**

26          12.   From the commencement of its sales in 2002, to the

27   date of filing this complaint, December 15, 2006, LARIN has

28   packaged, and continues to package its "LARIN" "Garage Seat" or

1  "stool" sold by LARIN to retailers in the identical LARIN

2  individual boxes (containers), in which boxes the retailer takes

3  delivery, and resells the LARIN stool in the LARIN unopened box

4  (container).  The LARIN box (container) is 22" x 22" x 24," and has

5  a bluish grey background color (side-view photograph of LARIN 2002

6  to present box is attached as Exhibit No. 4).

7       13.  From the commencement of LARIN's sales in 2002, and

8  continuing to the present, LARIN has sold its "LARIN" stool in the

9  identical LARIN designed box (container) with the identical

10  photographic advertisements and coloring on each LARIN box.

11       14.  The LARIN container (six (6) sided box), includes

12  four (4) identical color photographs depicted on two (2) sides of

13  the box (Exhibit Nos. 4 and 5, and on the top of the box, Exhibit

14  No. 6) which photographs are set against a bluish grey background

15  color and which four (4) photographs depicts the LARIN stool used

16  by:

17       (1)  "A man facing a motorcycle repairing a motorcycle

18  (Exhibit Nos. 4, 5, and 6 upper left);"

19       (2)  "Two men engaged in automobile repair (Exhibit Nos.

20  4, 5 and 6, lower left);"

21       (3)  "A man in front of an automobile located on a home

22  garage driveway engaged in automobile repair (Exhibit Nos. 4, 5 and

23  6, upper right);" and

24       (4)  "Two (2) women in a social club setting (Exhibit

25  Nos. 4, 5 and 6, lower right)."

26       15.  On the two (2) sides of the LARIN box with the four

27  (4) color photographs (Exhibit Nos. 4 and 5), is the phrase "Ideal

28  for Garage, Home or Office."

S:\FC3\LARIN CORPORATION\COMPLAINT 121406 .wpd                -5-

JDW 10

16.   The four (4) photographs on the top of the LARIN box (Exhibit No. 6), are displayed with the LARIN seat pictured in the "high position" with a faded view of the LARIN seat in a lower position, (Exhibit No. 6, LARIN box).

17.   In 2004, among other sales, LARIN sold twenty (20) thousand of its "LARIN Pneumatic Garage Stools" in the LARIN box to the Sam's Club stores for resale.

18.   Attached to this complaint as Exhibit No. 7 is the "Sam's Club" "Holiday Gift Guide 2004," (Exhibit No. 7, page 1), identifying as advertised by Sam's Club (at Exhibit No. 7, page 2), the "LARIN Pneumatic Garage Stool" "Interchangeable feet," "Synthetic Leather seat," "Easy to Maneuver," "Chrome plated" "Can be used as a bar stool" $97.68, #761329," (Sam's Club "Holiday Gift Guide," 2004, Exhibit No. 7, Page 2).

19.   In 2005, "Sam"s Club," notified plaintiff LARIN that the LARIN stool sold very well, and that Sam's Club had sold all of the 20,000 LARIN units, within several weeks that Sam's Club had purchased from LARIN.

20.   During 2002 to the date of this complaint, LARIN has sold its "LARIN STOOL" in the same container (Exhibit Nos. 4, 5 and 6) at wholesale to other retail entities.

**2006 Communications Between LARIN and Sam's Club**

21.   In May, 2005, LARIN attended a Sam's Club buyer's meeting in China, where Sam's Club placed an order for 25,000 LARIN stool units to be delivered by LARIN in the United States in 2005 by plaintiff LARIN to Sam's Club stores.

22.   In June, 2005, after placing its order, representatives of Sam's Club requested that LARIN lower its

11

1 | wholesale price of the LARIN stool to Sam's Club, to an amount

2 | which LARIN did not agree.  In June, 2005, Sam's Club then canceled

3 | Sam's Club's previous May, 2005 order for the 25,000 units of the

4 | LARIN "stool."

5 | **Defendant ALLTRADE**

6 |      23.  Similar to plaintiff LARIN, the ALLTRADE DEFENDANTS

7 | also manufacture and sell: (a) lift equipment, and (b) compressors,

8 | power tools, hand tools and auto accessories (ALLTRADE's website,

9 | is attached as Exhibit No. 8, which includes a photograph of the

10 | ALLTRADE building in Long Beach, California).

11 |      24.  In 2006, ALLTRADE copied the design of the LARIN

12 | "stool" and manufactured upwards of 50,000 duplicates of the LARIN

13 | "stool," in exact appearance, but in lower quality.  In about July,

14 | August or September, 2006, DEFENDANTS sold in the United States

15 | 50,000 units of the ALLTRADE duplicated LARIN "stool" units to

16 | Sam's Club, in individual ALLTRADE boxes (container) which Sam's

17 | Club then sold the ALLTRADE stools at retail in the ALLTRADE boxes

18 | through Sam's Club's stores.

19 |      25.  In October, 2006, advertisement of the DEFENDANTS

20 | ALLTRADE motorcycle stool commenced appearing on E-Bay (Exhibit No.

21 | 9, four (4) pages, which depict the ALLTRADE stool with highly

22 | similar advertisement pictures as on the LARIN box) (LARIN box,

23 | photographs on Exhibit No. 4 as compared to Exhibit No. 9, pages 2,

24 | 3 and 4 as used on the LARIN box sold during 2002 to the present,

25 | Exhibit Nos. 4, 5 and 6).

26 |      26.  As LARIN has undertaken since 2002, ALLTRADE also

27 | sold ALLTRADE stools at wholesale in self-contained boxes

28 | (containers) which the retailer Sam's Club and others then resold

1   the ALLTRADE stool in the unopened ALLTRADE boxes provided by

2   ALLTRADE.

3               The October 2006 ALLTRADE Product And Container

4       Acts of Federal (15 U.S.C. 1125 (a)), Common Law and State Law

5        (California Business and Professions Code §§ 15200 and 15500)

6                          Unfair Competition

7           27.   The ALLTRADE DEFENDANTS committed acts of federal

8   unfair competition (section 43(a) of the Lanham Act), by selling

9   the ALLTRADE stools in boxes (containers), which advertising

10  including specific photographs, colors and design on the ALLTRADE

11  DEFENDANTS' box (container) are identical to and in fact copies of

12  the content of the LARIN advertising, photographic composition and

13  color on the LARIN boxes, therefore, rendering it likely that the

14  ultimate consumer (purchaser) of the ALLTRADE stool would likely be

15  "confused, mislead, or deceived" as to the source or origin of the

16  DEFENDANTS' ALLTRADE "stool" product with that of plaintiff LARIN

17  previously sold (2002-2006) stools, which had been marketed and

18  sold in the LARIN containers in the same retail outlets since 2002.

19          28.   ALLTRADE's 2006 container (box) in which ALLTRADE

20  advertises, markets and sells ALLTRADE's "stools," which retailers

21  including Sam's Club resold in 2006, at retail and online in the

22  ALLTRADE container had affixed the identical coloring and identical

23  photographic composition advertising and other similar

24  identifications as LARIN had utilized on LARIN's box advertisement

25  (containers) since inception of the LARIN sales in 2002.

26          29.   The ALLTRADE box (container) measures 21 ½" x 21 ½"

27  x 14 (a side view photograph of the ALLTRADE box is attached to

28  this complaint as Exhibit No. 10).

S:\PCI\LARIN CORPORATION\COMPLAINT 121406.wpd          -8-

13

30.   The ALLTRADE box (container) has the identical bluish grey color background (photographs attached to this complaint as Exhibit Nos. 10, 11 and 12) as the previously sold LARIN container (Exhibit Nos. 4, 5 and 6) and the ALLTRADE container includes only four (4) photographs identical in specific subject matter, (Exhibit Nos. 10, 11 and 12) as the four (4) photographs on the LARIN box (container) (Exhibit Nos. 4, 5 and 6).

31.   The six (6) side ALLTRADE box includes two (2) sides with the four (4) highly similar color photographs, (Exhibit Nos. 10 and 11) and the top of the ALLTRADE box (Exhibit No. 12) includes two (2) similar color photographs, which are identical in context to the LARIN container, photographs (Exhibit Nos. 4, 5 and 6) which depict a person seated on the ALLTRADE stool:

(1)   "Engaged in "repair" of a motorcycle facing the motorcycle tank (Exhibit Nos. 10 and 11, right lower photograph);"

(2)   "A man in the front of an automobile on a garage driveway repairing the front of an automobile (Exhibit Nos. 10 and 11, right upper photograph);"

(3)   "A man in what appears to be the driveway engaged in a repair of an automobile (Exhibit Nos. 10 and 11, left lower photograph);" and

(4)   "Two (2) women in what appears to be a social club setting (Exhibit Nos. 10 and 11, upper left photograph)." (In the ALLTRADE photograph, of the two (2) women on the ALLTRADE stool in a social club setting, the ALLTRADE photograph advertisement pictures five (5) ALLTRADE stools, only two of which have the "optional backrest," with three stools pictured without the backrest, which are identical in design to the LARIN seat).

14

32.   The ALLTRADE box (Exhibit Nos. 10, 11, and 12) has the identical blue-grey background and shading as the LARIN box (Exhibit Nos. 4, 5 and 6) and includes the phrase: "Great for Garage, Game Room and Workshop," (Exhibit Nos. 10, 11 and 12), similar to LARIN's (Exhibit Nos. 4 and 5), "Ideal for Garage, Home or Office."

### Features Advertised On The LARIN Containers

33.   The LARIN box (container) against the blue-grey background with the LARIN "stool" (side view, Exhibit No. 13) identifies six (6) features (photograph, Exhibit No. 13):

(1)   "Pneumatic Adjustable Seat Height from 21" to 31;"

(2)   "Heavy Duty Chrome Plated Base with Footrest;"

(3)   "Five (5) Heavy Duty Caster Wheels for Easy Maneuverability;"

(4)   "360 (degrees) Swivel Movement;"

(5)   "Synthetic Leather Motorcycle Seat;" and

(6)   "Five (5) Optional Chrome Feet For Stability."

### Features Listed on ALLTRADE Container

34.   The ALLTRADE box (container) (side view photograph attached as Exhibit No. 14) with very similar bluish grey background identifies five (5) features with dots in the same print and style:

(1)   "Seat Swivels 360 Degrees;"

(2)   "Pneumatic One-Man Height Adjustment;"

(3)   "Seat Adjusts from 21" to 31;"

(4)   "Sissy Bar" "Style Back Adjusts For Lumbar Support;" and

(5)   "Realistic Motorcycle Saddle Tailored In High

15

1  Quality Leatherette."

2       35.   Both the LARIN box (Exhibit No. 13, side view) and

3  the ALLTRADE box (Exhibit No. 14, picture, lower left corner)

4  depict the respective "stools" in the highest position with a faded

5  picture of the stool in a lower position.

6                          **The Brochure**

7       36.   The LARIN one (1) page brochure included in its box

8  (attached as Exhibit No. 15) identifies (among other matters):

9       (a)   "Larin Corporation," "BSBS-2" "Pneumatic Garage

10  Seat" "UPC Code: 008435125442;"

11       (b)   "Specifications;"

12       (1)   "Pneumatic Adjustable Height Ranges: 21" to 31;"

13       (2)   "Five (5) Heavy Duty Caster Wheels;"

14       (3)   "Chrome Plated Aluminum Base with Foot Rest;"

15       (4)   "Synthetic Leather Motorcycle Seat," and

16  "360 (degree) Swivel Seal Movement."

17                      **The ALLTRADE Brochure**

18       37.   The October, 2006 "ALLTRADE" "SADDLE STOOL

19  INSTRUCTION MANUAL" (attached as Exhibit No. 16) (four (4) side

20  brochure) identifies "Model #481249."

21                  **Comparison Of The Two Products**

22       38.   The seat of the LARIN and ALLTRADE stools consist of

23  very similar dimensions and identical four (4) stitched elements

24  which comprises: (a) the seat; (b) the small back; (c) the side-

25  top; and (4) the rear back.

26       39.   The LARIN seat has two (2) ornaments per side, and

27  the ALLTRADE stool has one similar ornament per side.

28                  **Evidence Of Actual Confusion**

**16**

40.  A November 9, 2006 internet advertisement by "Priority Store" Austin Texas, (attached as Exhibit No. 17) is evidence of "actual confusion" in that the advertisement (Exhibit No. 17) first identifies in bold type: "LARIN (R) Pneumatic Garage Stool," and then beneath the LARIN identification, indicates for sale in non-bold type "ALLTRADE Motorcycle Saddle Stool," with a picture of the ALLTRADE stool, in the ALLTRADE box.

**The LARIN Trademark Registration On The Supplemental Register**

41.  Larin Corporation is the owner of U.S. Trademark Registration (Supplemental Register) Number 2,956,240, ('240' Registration), date of Registration, May 24, 2005 (copy of the '240' registration is attached as Exhibit No. 18).  The LARIN '240' Supplemental Registration mark identifies four (4) elements:

"The mark consists of the curvature of the seat, the side paneling of the seat, the second inner ring on the foot rest, and the decorative vertical lines on the bottom of the post."

42.  Upon an inspection and comparison of the LARIN "seat" to the ALLTRADE "stool," it is evident that as to the four (4) elements of the LARIN '240' Registration (Exhibit No. 24):

(1)  "The curvature of the ALLTRADE seat" appears almost identical to the LARIN stool;

(2)  "The side paneling of the ALLTRADE seat" appears highly similar to the LARIN stool;

(3)  "The ALLTRADE seat has an identical "second inner ring on the foot rest as that of LARIN stool;" and

(4)  "The ALLTRADE seat has the identical "vertical lines on the bottom of the post," that part of the post under the leg stand of each respective chair, identical to that of LARIN

17

1  stool.

2      43.   Plaintiff presents the '240' Supplemental

3  Registration (Exhibit No. 18) for purposes of indicating LARIN's

4  efforts to protect and establish the goodwill in the LARIN product,

5  which indicates ALLTRADE's copying of non-functional elements of

6  the LARIN stool.

7      44.   The ALLTRADE "stool" (Exhibit Nos. 10, 11, 12 and

8  14) is an inferior and an intentional and deliberate copy of the

9  LARIN "seat" except for the optional back rest, (which backrest is

10 not depicted in three (3) stools in the ALLTRADE box (container)

11 (photograph, Exhibit Nos. 10 and 11).

12     45.   The ALLTRADE "stool" (includes the precise four (4)

13 elements identified in the LARIN '240' Supplemental Trademark

14 Registration.

15     46.   ALLTRADE created the ALLTRADE box (container),

16 (Exhibit Nos. 10, 11, 12 and 14) to advertise, market and sell the

17 ALLTRADE stool intentionally duplicating certain distinctive and

18 prominent advertising elements (the identical composition and

19 nature of the four (4) photographs of the LARIN "seat," box

20 (container), (Exhibit Nos. 4, 5, 6 and 13).  The ALLTRADE box

21 (container) (Exhibit Nos. 10, 11, 12 and 14) have the same bluish

22 grey color background and identical change in the shading of the

23 bluish grey background (Exhibit Nos. 10, 11, 12 and 14) as the

24 LARIN box (container) (Exhibit Nos. 4, 5, 6 and 13).  The

25 photographs on the ALLTRADE container (Exhibit Nos. 10, 11, 12 and

26 14) are highly similar in content to the LARIN container, (Exhibit

27 Nos. 4, 5, 6 and 13) and are highly similar to other advertisement

28 elements.

18

## Acts Of Unfair Competition

47.   In 2006, DEFENDANTS undertook to copy the precise design of the LARIN "stool," created an inferior product, and in 2006, packaged the DEFENDANTS' ALLTRADE "stool," in packaging (container) which was in great part identical (Exhibit Nos. 10, 11, 12 and 14) to that of plaintiff LARIN's packaging (container) (Exhibit Nos. 4, 5, 6, and 13), which LARIN had utilized to identify, market and sell LARIN's product since 2002.

48.   In 2006, DEFENDANTS then sold upwards of fifty thousand (50,000) of the ALLTRADE product in the ALLTRADE boxes (Exhibit Nos. 10, 11, 12 and 14) to Sam's Club, utilizing identical packaging containers to which LARIN had previously sold its product also to Sam's Club, knowing that DEFENDANTS' ALLTRADE "stool" (Exhibit Nos. 10, 11, 12 and 14) as sold by Sam's Club, with the photographic advertising, color and packaging of DEFENDANTS' ALLTRADE boxes identical to that of the previously packaged LARIN boxes (containers) (Exhibit Nos. 4, 5, 6 and 13) and identical to previous LARIN advertising, would likely cause confusion, mistake and deception to ultimate consumers (Sam's Club customers) as between the LARIN "stool" and the ALLTRADE "stool," and/or other consumers who would purchase the ALLTRADE product.

49.   DEFENDANTS have undertaken acts of willful and deliberate violations of the Lanham Act, Section 43(a)(1), 15 U.S.C. 1125(a)(1).

50.   DEFENDANTS intended through the use on their ALLTRADE box (container) of the bluish-grey color shadings, and contents of photographs on the ALLTRADE's box (container), (Exhibit Nos. 10, 11, 12 and 14) that the advertisements as used in

19

1 connection with the sale of DEFENDANTS' ALLTRADE's goods in
2 interstate commerce, or which affected interstate commerce, would
3 likely cause confusion, mistake or deceive the ultimate consumer of
4 the affiliation, connection or association of DEFENDANTS'
5 ALLTRADE's "stool" with that of plaintiff LARIN's "stool."

6      51.   DEFENDANTS' acts were intentional, in that
7 DEFENDANTS designed ALLTRADE's containers and packaging with the
8 very purpose of intending to create packaging and advertising on
9 DEFENDANTS' box (container) that was duplicative of the LARIN box
10 (Exhibit Nos. 4, 5, 6 and 13) which would likely cause confusion,
11 mistake or deceive the ultimate consumer of the affiliation,
12 connection or association of DEFENDANTS' ALLTRADE "stool" with that
13 of plaintiff LARIN's "stool."

14      52.   LARIN has been damaged in an amount to be proven at
15 trial.

16      53.   In that DEFENDANTS' ALLTRADE's intentional acts were
17 intentional, LARIN asserts that the burden of proof shifts to
18 DEFENDANTS and each of them to demonstrate that the retail
19 customers would not likely be confused, mistaken or deceived as to
20 the source or origin of DEFENDANTS' ALLTRADE product as compared to
21 plaintiff LARIN's product.

22      54.   In that DEFENDANTS' ALLTRADE's acts were intentional
23 and willful, plaintiff LARIN requests an award of treble damages
24 and attorneys' fees.

25      55.   LARIN also seeks a preliminary and permanent
26 injunction against DEFENDANTS' acts of unfair competition.

27 ///
28 ///

1

<u>Second Claim for Relief</u>

2

(For Common Law Unfair Competition)

3

(Against All Defendants)

4     56.  Plaintiff LARIN reincorporates paragraph Nos. 1

5   through 55 as though fully set forth in this paragraph.

6     57.  DEFENDANTS' acts constitute common law unfair

7   competition.

8     58.  Plaintiff LARIN seeks damages in an amount to be

9   proved at trial.

10     59.  DEFENDANTS' acts were willful, malicious and

11   intentional, and plaintiff LARIN seeks an award of punitive

12   damages.

13

<u>Third Claim for Relief</u>

14

(For Violation of California Business and Professions

15

Code §§17200 and 17500)

16

(Against All Defendants)

17     60.  Plaintiff LARIN reincorporates paragraph Nos. 1

18   through 59, as though fully set forth in this paragraph.

19     61.  The acts of DEFENDANTS constitute statutory unfair

20   competition and false advertising under California Business and

21   Professions Code §§ 17200 and 17500.

22     62.  Plaintiff LARIN seeks injunctive relief.

23

24     WHEREFORE, plaintiff LARIN seeks:

25     1.  Damages according to proof;

26     2.  Treble damages and attorneys' fees under the Lanham

27   Act in that DEFENDANTS' acts were willful and intentional;

28     3.  Punitive damages on its claim for common law unfair

21

1  competition;

2           4.    Preliminary and Permanent Injunctive relief to

3  prohibit further acts of unfair competition;

4           5.    Costs of suit; and

5           6.    Such other relief as the court may deem appropriate.

6

7  Dated:   December 14, 2006              Respectfully submitted,

8                                          LAW OFFICES OF ALLEN HYMAN

9

10                             By:   _____

11                                         Allen Hyman
                                           Attorneys for Plaintiff
12                                         LARIN CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. Rule 38 and Local Rule 38-1, plaintiff LARIN requests a trial by jury.

Dated:  December 14, 2006                    Respectfully submitted,

LAW OFFICES OF ALLEN HYMAN

By: _____
     Allen Hyman
     Attorneys for Plaintiff
     LARIN CORPORATION

23



EXHIBIT

2



