UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARIN CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ALLTRADE, INC., a California corporation; ALLTRADE TOOLS, LLC, a California limited liability company; ANDRE LIVIAN, an individual,<br><br>　　　　Defendants.<br>_____<br>ALLTRADE TOOLS, LLC, a California limited liability company,<br><br>　　　　Counter-Claimant,<br><br>　　vs.<br><br>LARIN CORPORATION,<br><br>　　　　Counter-Defendant.<br>_____ | Case No. EDCV 06-1394 ODW (OPx)<br><br>ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES UNDER 15 U.S.C. § 1117(a), BUT GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES UNDER 28 U.S.C. § 1927. |

**I.　INTRODUCTION**

Now before the court is Defendants Alltrade, Inc.'s, Alltrade Tools, LLC's, and Andre Livian's (collectively "Alltrade") Motion For Attorneys' Fees for defending against trademark infringement claims brought by Plaintiff Larin Corporation ("Larin"). On April 21, 2008, this court entered judgment in favor of Alltrade. Alltrade filed the

instant Motion on May 5, 2008. Larin filed an opposition to the Motion on June 9, 2008, and Alltrade filed a reply on June 16, 2008. After reviewing the documents submitted in connection with the instant Motion, this court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

**II.   DISCUSSION**

At issue is whether this court has jurisdiction to consider the instant Motion. This court must also determine the "exceptional" classification of this case under 15 U.S.C. § 1117(a) and whether Alltrade would be entitled to attorneys' fees and costs. Finally, a decision shall be made whether Larin's counsel should be held personally liable for certain "excessive" fees and costs under 28 U.S.C. § 1927.

### A.   Jurisdiction Over This Motion for Attorneys' Fees

Larin filed its Notice of Appeal on May 7, 2008. Alltrade's counsel filed the instant Motion on May 5, 2008. Consequently, the Motion was pending at the time of Larin's Notice of Appeal, and this Court retains jurisdiction to dispose of the Motion with the appeal pending. *See* Fed. R. App. Pro. 4(a)(4)(A-B); *Love v. Mail On Sunday*, 2007 WL 2709975, *1, n.2 (C.D. Cal. Sept. 7, 2007) (holding that "[a]n appeal on the merits does not deprive the district court of jurisdiction to award attorneys' fees" and such determination "promotes judicial economy by allowing any appeal of the fee award to be consolidated"); *see also Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 & n.1 (9th Cir. 1983).

### B.   Determination of "Exceptional" Status Under 15 U.S.C. § 1117(a)

*1.   Legal Standard for "Exceptional Status"*

15 U.S.C. § 1117(a) provides that a court "*may* award reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a) (emphasis added). When a defendant is the prevailing party, the Ninth Circuit's standard for "exceptional cases" is "[w]hen a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *See Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (quoting *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 555 (8th Cir.1996)).

2

Even under this standard, courts have discretion in awarding attorney fees. *Id.* at 825; *see also Gracie v. Gracie*, 217 F.3d 1060, 1071-72 (9th Cir. 2000).

Notwithstanding, it may be an abuse of the court's discretion when a case is found to be "exceptional" and the court fails to "consider[] the available remedy of attorneys' fees or, at least, should have stated its reasons for failing to do so." *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir. 1983)*; see also Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (holding that denial of a motion for attorney fees is reviewed for abuse of discretion); *Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir. 1992) (holding that failing to consider attorney fees when a case is found to be "exceptional" is an abuse of discretion).

The Ninth Circuit's standard is ambiguous as to whether a plaintiff's litigation conduct should be a factor in designating a case as "groundless, unreasonable, vexatious, or pursued in bad faith." *Stephen W. Boney, Inc.*, 127 F.3d at 827. The Ninth Circuit in *Stephen W. Boney, Inc.* suggested that "malicious conduct" might satisfy the "exceptional case" requirement, but also held that "animosity among [the parties]" does not make a case "exceptional." *Id.* Other Ninth Circuit cases discuss if, and imply that, a plaintiff's conduct is a factor in designating a case as "exceptional." *See Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (inquiring whether the plaintiff "acted capriciously or pursued litigation to harass"); *Panavision Intern., L.P. v. Toeppen*, 945 F.Supp. 1296, 1305 (C.D.Cal. 1996) (giving examples of "exceptional cases" "where the [plaintiff] has committed 'extraordinary, malicious, wanton, and oppressive conduct'" (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1014, 1026 (9th Cir.1985))).

Further evidence of the role of a plaintiff's conduct can be found in other circuits. For example, the Tenth Circuit uses a multi-factor test that analyzes if "an infringement suit could be 'exceptional' for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious

1  and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as
2  well." *Nat. Ass'n. of Prof. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d
3  1143, 1147 (10th Cir. 2000). The Tenth Circuit noted that "[n]o one factor is
4  determinative." *Id.* (ruling ultimately that the district court did not abuse its discretion
5  in denying attorneys' fees.).

6        The Ninth Circuit's implications, and other circuits' expressed positions,
7  demonstrate that a plaintiff's conduct is considered in the overall determination of an
8  "exceptional" status under 15 U.S.C. § 1117(a). However, the merits of a case are the
9  primary focus of an "exceptional" status determination and weighed heavily in the
10 analysis. *See Stephen W. Boney, Inc.*, 127 F.3d at 827 (using the standard set forth to
11 analyze solely the merits of a case); *Nat. Ass'n of Prof. Baseball Leagues, Inc.*, 223
12 F.3d at 1147 n. 1 (declaring two of the three main factors to be merit based); *S
13 Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (defining
14 "oppressive" to include a lack of merit). Accordingly, conduct is more of a persuasive
15 element, whereas the merits of a case are more determinative.

16                     *2.     Analysis of "Exceptional" Status*

17       In applying the above standards to the matter at hand, a deep analysis of the
18 litigation conduct by Larin's counsel, Allen Hyman, is unnecessary. This court
19 considered Mr. Hyman's conduct to be "unprofessional, unethical, and . . .
20 contemptible" which "prolonged litigation" and "unnecessarily burdened the court" and
21 brought Mr. Hyman to the brink of monetary sanctions at least once before. *See* Order
22 Denying Plaintiff's Ex Parte Application For Reconsideration (Apr. 25, 2008).
23 Accordingly, Mr. Hyman's conduct should be considered as a factor in determining the
24 "exceptional" status of this matter.

25       Mr. Hyman's conduct is certainly noteworthy in this matter. However, his
26 conduct is only one element in the overall determination of an "exceptional status."
27 More importantly, the actual merits of Larin's case must be considered and balanced
28

4

against Mr. Hyman's egregious and unprofessional conduct. Regardless of either parties' assertions, substantially similar qualities of Larin's products and trade dress were present in Alltrade's products and trade dress. In fact, this court viewed Larin's claims to be highly meritorious and expected either a quick resolution or expeditious trial. Nevertheless, due primarily to Mr. Hyman's conduct, the litigation ended prematurely. This was both unfortunate for Larin and fortunate for Alltrade.

Although ethical and professional conduct needs to be preserved within the legal community, contemptible actions of one party's counsel alone does not make a case "exceptional" when balanced with the reasonable and significant substantive aspects of the claims presented. Here, the *substantive aspects* of Larin's claims clearly were not "groundless, unreasonable, vexatious, or pursued in bad faith," *Stephen W. Boney, Inc.*, 127 F.3d at 827. In other words, the merits of Larin's overall case outweigh Mr. Hyman's conduct, and therefore, this case is not "exceptional." In sum, the court feels that Mr. Hyman's sporadic misconduct does not mean that Plaintiff's claims were overall "pursued in bad faith" under 15 U.S.C. § 1117(a).

### C. Liability for Excess Attorney Fees and Costs Under 28 U.S.C. § 1927

#### *1. Legal Standard for "Excessive Costs" and Reasonableness of Attorney Fees and Costs*

Although this case is not "exceptional" under 15 U.S.C. § 1117(a), Mr. Hyman can be held personally liable for "excessive" costs pursuant to 28 U.S.C. § 1927. Section 1927 states an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Section 1927 applies "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.1996) (internal quotations omitted); *see also Salstrom v. Citicorp Credit Services, Inc.*, 74 F.3d 183, 185 (9th Cir. 1996) (granting sanctioning authority where "the sanctions are

based upon the cumulative effect of the attorney's conduct."); *compare Gomez v. Vernon*, 255 F.3d 1118, 1133-34 (9th Cir.2001) (holding that a "court has the inherent power to sanction a party or its lawyers . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as well as for willful abuse of the judicial processes.") (internal quotation, citation, and alterations omitted).  In addition, "[t]actics undertaken with the intent to increase expenses or delay may also support a finding of bad faith.  Even if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith." *New Alaska Dev. Corp. V. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

If an award of attorneys' fees and costs is appropriate under 28 U.S.C. § 1927, the court must first determine how much of the attorneys' fees and costs are due to "excessive" litigation. *See In re Yagman*, 796 F.2d 1165, 1184-85 (9th Cir.1986)*; U.S. v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347-48 (9th Cir. 1985); *ADO Finance, AG v. McDonnell Douglas Corp.*, 938 F.Supp. 590, 595 (C.D. Cal. 1996).  Then, the "excess" amount is evaluated for reasonableness. *See In re Yagman*, 796 F.2d at 1184-85; *see also ADO Finance,* 938 F.Supp. at 595.  The reasonableness analysis of the "excess" fees and costs includes the factors set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir.1975). *See ADO Finance*, 938 F.Supp. at 595.  The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr*, 526 F.2d at 69-70.

Additionally, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final [] figure." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir.

6

1992). Notwithstanding, an award based on a percentage of attorneys' fees and costs is "approved" if "it would be impossible to determine with mathematical precision the amount of attorney's fees and costs incurred . . . as a direct result of . . . misconduct." *Salstrom*, 74 F.3d at 185. Regardless of the calculation approach, the court is "required to explain the reasons for its fee award." *Gates*, 987 F.2d at 1400.

### 2. *Analysis of the Amount of "Excessive" Attorney Fees and Costs*

In their Motion, Alltrade requests the full amount of their alleged attorneys' fees and costs in this matter, $538,020.10. Alltrade also requests that Mr. Hyman be personally liable for the amount under 28 U.S.C. § 1927. In addition to the above discussion on Mr. Hyman's behavior, Mr. Hyman "played bait-and-switch" and "misled [Alltrade] and [] the [c]ourt." (Rep.'s Tr. Of Proceedings, In Chambers Tel. Conf. at 14-15, Apr. 18, 2008.) Mr. Hyman also engaged in "deceit," "misdirection" and "every single ploy in order to [] try to surprise [Alltrade] as to exactly what theory that [Mr. Hyman] would be proceeding on, so that perhaps [Alltrade] would not know how to defend against this case." (Rep.'s Tr. Of Proceedings, In Chambers Tel. Conf. at 18, Apr. 18, 2008.) Therefore, under § 1927, some of Mr. Hyman's conduct qualifies as "unreasonable," tantamount to "bad faith," and he shall be personally liable for a reasonable portion of Alltrade's fees.

In their Motion, Alltrade does not provide a calculation or explanation of an amount they consider "excess" due to Mr. Hyman's misconduct. Consequently, in connection with Mr. Hyman's misconduct, this court must first ascertain when Alltrade's attorneys' fees and costs began to accrue and calculate how much of the accrued amount is "excessive." The court must then determine if the "excessive" amount is reasonable.

As Alltrade highlights in their Motion, Mr. Hyman primarily prosecuted Larin's case under the theory of false advertisement until a Motion for Summary Judgment was filed on February 15, 2008. Facing a Motion for Summary Judgment, Mr. Hyman

7

"switched" his theory to one of trade dress infringement. Then, on April 18, 2008, Mr. Hyman attempts to "switch back" to his prior theory of false advertising, claiming he discovered proper evidence for false advertising as recent as December 2007. (Rep.'s Tr. Of Proceedings, In Chambers Tel. Conf. at 3-18, Apr. 18, 2008.)

Regardless of Alltrade's assertions, Alltrade would have eventually needed to defend against Larin's claims. Nevertheless, Mr. Hyman's "bait-and-switch" tactics directly prolonged litigation and forced Alltrade to defend against a theory of trade dress infringement when Mr. Hyman had specifically noted previously that he was not going forward with a trade dress claim. Most of Mr. Hyman's misleading tactics began after the Motion for Summary Judgment in February 2008 and continued, intermittently, until the ultimate dismissal of the case on April 18, 2008. Therefore, this court shall examine Alltrade's invoices for any excessive litigation that could have occurred from February 16, 2008 until April 18, 2008 ("Audit Period").

During this Audit Period, Alltrade invoiced $253,717.41 in attorneys' fees and costs, or approximately forty-seven percent of the total attorneys' fees and costs requested by Alltrade. However, not all of these fees and costs were due to Mr. Hyman's misconduct. Regardless of Mr. Hyman's tactics, Alltrade still had to put on a defense during this Audit Period, a defense which could account for most, if not all, of the fees and costs incurred. Therefore, this court must evaluate Alltrade's invoices for fees and costs attributable solely to Mr. Hyman's misconduct.

In auditing Alltrade's invoices, this court finds only a few direct references to work conducted in response to Mr. Hyman's impropriety. An entry for February 26, 2008 by Dylan Ruga, one of Alltrade's attorneys, has over seven hours for various tasks, including "prepared motion *in limine* to exclude evidence of trade dress infringement at trial." (Ruga Dec., Ex. I at 152.) Another entry by Mr. Ruga for March 11, 2008 has over eight hours for various tasks, including "[d]rafted opposition to plaintiff's motion to strike and for sanctions; worked on motions *in limine* to exclude evidence of trade dress infringement." (Ruga Decl., Ex. I at 158.) Additionally, an

entry appears on March 19, 2008 when Mr. Ruga billed over seven hours for various activities, including "analyzed trade dress claim and began to gather facts/evidence to defeat claim at trial." (Ruga Dec., Ex. I at 160.) An entry for April 15, 2008 by Mr. Ruga has eight hours billed for various activities, including "drafted trade dress questions that would have been asked at the [deposition]; researched law on judicial estoppel." (Ruga Dec., Ex. I at 175.) Finally, from April 16 through 18, 2008, Mr. Ruga and Seong Kim each entered multiple hours for various tasks. *Id.* However, only their preparation for and participation in a telephonic conference with the court and Mr. Hyman, regarding Mr. Hyman's "bait and switch" tactics, should be considered "excessive." *Id.*

In general, Alltrade's invoices contain overbroad and vague entries. Alltrade's invoices also include an inordinate amount of "block billing,"[1] thereby making it difficult, if not impossible, to determine time reasonably spent as a result of Mr. Hyman's misconduct. Additionally, "overnight and local messenger," "duplicating," "facsimile," and "on-line research/information retrieval" services are billed in a "blanket" format without any justification for the use of such services in connection with this case. Similarly, Alltrade repeatedly charged for "outside printing" services, but also charged for "duplicating" services without any explanation as to the need for both services.

While this court does not contend that Alltrade's attorneys "padded" their bills, it suspects that Alltrade often billed beyond a reasonable amount. For example, Alltrade claims it's legal team included three partners and six associates, but only one legal assistant and one paralegal. Alltrade also allegedly hired additional "temporary staff" in March 2008, the need for which is baffling with eleven persons already working on this

---

[1] "Block Billing" is where, for billing purposes, the total daily time spent working on a case is entered, instead of itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n. 9 (10th Cir.1998) (internal citations and quotations omitted); *see also Defenbaugh v. JBC & Assocs.*, 2004 U.S. Dist. LEXIS 16256, 2004 WL 1874978 (N.D. Cal. 2004) (block billing occurs where "discrete and unrelated tasks are lumped into one entry.").

1  case. Although this case is important, given the attorneys' experience and the non-
2  complex issues involved, this case should not have required the time of three partners
3  and six associates, let alone "temporary staff," all largely doing the same things.

4  Because Alltrade's invoices were deficient, duplicative, vague, and demonstrate a
5  degree of overstaffing, this court concludes that it is impossible to ascertain the full
6  scope of Alltrade's attorneys' fees and costs that can be attributed to Mr. Hyman's
7  misconduct. Consequently, for the reasons stated herein, this court can only rely upon
8  the entries discussed above in calculating a reasonable amount of "excessive" attorneys'
9  fees. Based on these entries, which were in "block billing" format, this court allocates
10 fifteen hours of billable time to Mr. Ruga and two hours of billable time to Mr. Kim.[2]
11 According to the billable rates provided by Alltrade in its Motion and invoices, Mr.
12 Ruga's rate is $390 per hour, and Mr. Kim's rate is $495 per hour. This court feels
13 these rates are fair given the experience of the attorneys and thus calculates the total
14 amount of "excessive" fees to be $6,840. Therefore, pursuant to 28 U.S.C. § 1927, and
15 after weighing $6,840 with the *Kerr* factors, this court finds $6,840 to be a reasonable
16 amount of "excessive" attorney fees, for which Mr. Hyman shall be personally liable.
17 //
18 //
19 //
20
21 **III.  CONCLUSION**
22 For the reasons stated herein, Defendant Alltrade's Motion for Attorney Fees

---

[2] Rather than the original seven hours billed for February 26, 2008 by Dylan Ruga, the court feels that three hours is a reasonable time for such drafting a motion *in limine* and similar activities. Another entry by Mr. Ruga for March 11, 2008 has over eight hours billed. The court feels that four hours is reasonable for this entry when dealing only with the "excessive" workload. Additionally, on March 19, 2008 Mr. Ruga billed over seven hours, where the court estimates that only three hours were needed for the excess tasks. Three hours is appropriate for Mr. Ruga's work billed for April 15, 2008. Finally, for Mr. Ruga's and Seong Kim's work performed April 16-18, 2008, the court feels that two hours for each attorney is reasonable.

1  under 15 U.S.C. § 1117(a) is hereby DENIED.  Defendant Alltrade's Motion for
2  Attorney Fees under 28 U.S.C. § 1927 is hereby GRANTED, and Defendant Alltrade
3  shall receive $6,840 in attorneys' fees and costs.  Accordingly, pursuant to 28 U.S.C. §
4  1927, Plaintiff Larin's counsel, Allen Hyman, shall personally satisfy and pay this
5  amount directly to Defendant Alltrade's counsel within ninety days from the date
6  hereof.

8  IT IS SO ORDERED

10  DATED:     July 11, 2008

_____
OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE