O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LARIN CORPORATION, | ) | CASE NO. EDCV 06-01394 ODW (OPx) |
| Plaintiff, | ) | |
| | ) | ORDER **DENYING** PLAINTIFF'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT, OR IN THE |
| ALLTRADE, INC., a California | ) | ALTERNATIVE, FOR SUMMARY |
| Corporation; ALLTRADE, TOOLS, | ) | ADJUDICATION OF ISSUES [417], |
| LLC, a California limited liability | ) | AND **DENYING** DEFENDANTS' |
| company; ANDRE LIVIAN, an | ) | MOTION TO DISMISS, OR IN THE |
| individual, | ) | ALTERNATIVE FOR SUMMARY |
| Defendants. | ) | JUDGMENT [416]; GRANTING [453] |

## I.  INTRODUCTION

Pending before the Court are the parties' two concurrently filed Motions: Plaintiff's Motion for Summary Judgment, or in the Alternative, for Summary Adjudication of Issues, (Dkt. # 417), and Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41, or in the alternative for Summary Judgment.  (Dkt. # 416.)  The parties timely filed their respective oppositions and replies to the instant Motions.  After careful consideration of the briefing and evidence submitted, the Court deems the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78;

L.R. 7-15.   For the following reasons, the Court **DENIES** both Plaintiff's and Defendants' Motions.

## II.   PROCEDURAL HISTORY

Plaintiff, Larin Corporation ("Plaintiff"), initiated this unfair competition action against Defendants AllTrade, Inc., AllTrade Tools, LLC, and Andre Livian (collectively, "Defendants") on December 15, 2006. (Dkt. # 1.)  Because the procedural history of the case is extensive, the Court will only recount those events which are relevant to the instant Motions.   On March 19, 2008, the Court denied Defendant AllTrade, Tools, LLC's Motion for Summary Judgment. (Dkt. # 212.) However, on Defendants' Motion for Reconsideration, the Court granted Defendants' Motion for Summary Judgment as to the claim of trade dress infringement, finding that Plaintiff was judicially estopped from pursuing this theory. (Dkt. # 325.)  Specifically, the Court found that "Plaintiff's conduct during the course of discovery was a bad faith attempt to mislead Defendants as to the theory of liability it was being called upon to defend." (Dkt. # 325 at 3.)  Because Plaintiff abandoned its other theory of false advertising and consequently was left with no remaining claims, the Court entered judgment in favor of Defendants on April 21, 2008. (Dkt. # 341.)  On April 25, 2008, the Court denied Plaintiff's Ex Parte Motion for Reconsideration. (Dkt. # 345.)  Plaintiff timely appealed to the Ninth Circuit on May 7, 2008.  (Dkt. # 354.)

On March 1, 2010, the Ninth Circuit reversed the grant of summary judgment in favor of Defendants. (Dkt. # 402.)  While the Ninth Circuit did not "opine as to whether the [Court] correctly concluded that Larin's attorney attempted to mislead Alltrade's counsel during discovery" and found that the Court's "frustration with said counsel's lack of clarity [was] certainly understandable[,]" it stated that, assuming there "is error to be remedied here, judicial estoppel is the wrong tool for the job." (*Id.* at 4.)  Thus, the case was remanded as to the issue of trade dress infringement.  (*Id.* at 6.)

Defendants now move to dismiss Plaintiff's case in its entirety based on Federal Rule of Civil Procedure 41(b), which they assert is the right tool to remedy Plaintiff's

discovery abuses.  The Court will address this argument, along with the substantive arguments regarding the parties' respective Motions for Summary Judgment below.

### III.  FACTS

The Court has had the occasion to recount the factual background of this case in its previous Orders.  Because the undisputed background facts essentially have not changed, the Court will only briefly relate the pertinent facts for context.

In 2001 and 2002, Plaintiff began to manufacture and sell a product identified as the Larin Pneumatic Garage Seat (the "Larin stool").  (Plaintiff's Statement of Uncontroverted Facts ("PUF"), 10.)  The Larin stool was sold in individual boxes measuring  22" x 22" x 24" (the "Larin box").  (PUF, 17.)  The Larin box has a blueish grey background, which fades from dark to light.  (PUF, 17-18.)  Additionally, the box includes four color photographs depicted on the top and two sides of the box.  (PUF, 20.)  The photographs depict the Larin stool used by: (1)"A man sitting on a Larin stool repairing a motorcycle;" (2) "Two men sitting on Larin stools engaged in automobile repair;" (3) "A man sitting on a Larin stool in front of an automobile located on a home garage driveway engaged in automobile repair;" and (4) "Two (2) women sitting on Larin stools in a social club setting."[1]  (PUF, 20.)

Plaintiff contends that in 2006 Defendants purchased the Larin stool and box and infringed Plaintiff's trade dress by copying the inherently distinctive elements of the Larin box, as described above.  (Pl.'s Mot. at 3.)  Defendants' box (the "AllTrade box") is 21 1/2" x 21 1/2" x 14".  (PUF, 47.)  First, as to the background, Plaintiff contends that the AllTrade box has a "similar, if not identical blueish grey color" background and contains "the identical subject matter of the (4) photographs as on the Larin box."  (PUF, 48.)  Defendants dispute this assertion, contending that the AllTrade box has a background created from a modified photograph of an asphalt surface and four

---

[1]  Plaintiff lodged with the Court one Larin box and one AllTrade box.  (Dkt. # 445.)  Upon review of this evidence, the Court notes that the last photograph on the Larin box to which Plaintiff refers also contains one man and one woman standing behind a bar.

application shots that are not identical to Plaintiff's.  (Defendants' Genuine Issues of Material Fact in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. # 428-2) ("DGIMF"), 48.)   Second, as to the photographs, Plaintiff states that the AllTrade box, similarly to the Larin box,  "includes two (2) sides with four (4) color photographs, and one side with two (2) similar color photographs which depict: (1) A man engaged in 'repair' of a motorcycle; (2) A man in the front of an automobile on a garage driveway repairing the front of an automobile; (3) A man in what appears to be the driveway engaged in a repair of an automobile; and (4) 'Two (2) women in what appears to be a social club setting.'"[2] (PUF, 49.)  In the last photograph of the women, there are five stools depicted, two of which Plaintiff claims are actually the Larin stool.  (PUF, 50, 56.) Defendants claim, on the other hand, that the stools depicted in the photographs are actually AllTrade stools.  (DGIMF, 49.)

## III.   LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Evidence the court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file.  Fed. R. Civ. P. 56(c)(2).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish

---

[2]  The Court notes that the last picture to which Plaintiff refers actually contains one woman sitting on a stool, one man directly behind that woman, and one woman behind a bar.

1  the existence of an element essential to that party's case, and on which that party will bear

2  the burden of proof at trial."  *Celotex Corp v. Catrett*, 477 U.S. at 322.

3      Only genuine disputes over facts that might affect the outcome of the suit will

4  properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248; *see also*

5  *Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the

6  nonmoving party must present specific evidence from which a reasonable jury could

7  return a verdict in its favor).  "A scintilla of evidence or evidence that is merely colorable

8  or not significantly probative does not present a genuine issue of material fact." *Addisu*

9  *v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

10      It is not the task of the district court "to scour the record in search of a genuine

11  issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable

12  particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d

13  1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026,

14  1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence

15  establishing a genuine issue of fact, where the evidence is not set forth in the opposing

16  papers with adequate references so that it could conveniently be found.").

17      The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).

18  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

19  genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE*

20  *Corp.*, 594 F. 2d 730, 738 (9th Cir. 1979).  Conversely, a genuine dispute over a material

21  fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

22  a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

23

24                              **IV.  DISCUSSION**

25      Defendants' move the Court to dismiss Plaintiff's action in its entirety pursuant to

26  Federal Rule of Civil Procedure 41(b), or in the alternative pursuant to Federal Rule of

27  Civil Procedure, Rule 37(b)(2)(A).  (*See generally* Def.'s Mot.)  In the alternative,

28  Defendants seek summary judgment on the grounds of equitable estoppel.  (*See id.*)

Conversely, Plaintiff seeks summary judgment, or in the alternative summary

1  adjudication of issues.  (*See generally* Pl.'s Mot.)  The Court will address each parties

2  contentions in turn.

3

4  ## A.   Defendants' Motion to Dismiss Pursuant to FRCP 41(b)[3]

5       Dismissal under Rule 41(b) may be warranted when a party "fails to comply with

6  the [Federal Rules]."  In determining whether a dismissal under Rule 41(b) is appropriate,

7  the Ninth Circuit requires the district court to consider the following factors: "(1) the

8  public's interest in expeditious resolution of litigation; (2) the court's need to manage its

9  docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public  policy

10  favoring disposition of cases on their merits; and (5) the availability of less drastic

11  sanctions."  *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d

12  1217, 1226 (9th Cir. 2006) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th

13  Cir. 1987)); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (quoting

14  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)).  Dismissal is

15  appropriate if "at least four factors support dismissal . . . or where at least three factors

16  'strongly' support dismissal."  *Yourish*, 191 F.3d at 990.  However, "[t]hese factors are

17  not a series of conditions precedent before the judge can do anything, but a way for a

18  district judge to think about what to do."  *In re Phenylpropanolamine*, 460 F.3d at 1226

19  (quoting *Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

20  Indeed, dismissal "must be available to the district court in appropriate cases, not merely

21  to penalize those whose conduct may be deemed to warrant such a sanction, but to deter

22  those who might be tempted to such conduct in the absence of such a deterrent."  *Nat'l

23  Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

24       Defendants allege that Plaintiff "deliberately engaged in systematic violations

25  of the Federal Rules that permeated the entire case."  (Def's Mot. at 1.)  Specifically,

26  Plaintiff's abuses consist of: (1) not responding in a timely fashion to discovery

27  _____

28       [3]  Defendants also move for dismissal under Rule 37(b)(2)(A), which requires an examination
of the same five factors under Rule 41(b).  Because the Court denies Defendants' Motion under Rule
41(b), it follows that the Motion is also denied under Rule 37(b)(2)(A).

1  requests in violation of Rule 34; (2) certifying false responses to interrogatories for

2  improper purposes in violation of Rule 26(g); (3) failing to produce documents in

3  violations of Rules 34 and 37, for which Plaintiff has been sanctioned twice, to the

4  tune of $2,925.00 and $3,900.00; (4) failing to supplement discovery responses in

5  violation of Rule 37(c); (5) improperly interfering with a deposition in violation of

6  Rule 30(c), for which Plaintiff was sanctioned $1,000.00; and (6) being substantially

7  unprepared for the pretrial conferences in violation of Rule 16.  (Def.'s Mot. at 1-2,

8  8.)  Indeed, the Court warned the parties on April 7, 2008 that failure to properly file

9  all required pretrial documents would result in dismissal.  (Dkt. # 289.)

10      The first factor regarding the public's interest in expeditious resolution of

11  litigation weighs in favor of dismissal as this case has been pending for over four

12  years.  The second factor regarding the Court's ability to manage its docket also

13  weighs in favor of dismissal.  There are now over 450 docket entries.  Upon reviewing

14  these entries, one can only conclude that the parties have engaged in extensive and

15  unwarranted motion practice.  Further, the Court has held numerous hearings and has

16  continued several of those hearings because of counsel's lack of preparation.

17      The third factor regarding the risk of prejudice to Defendants may be satisfied if

18  "the plaintiff's actions impair the defendant's ability to go to trial or threaten to

19  interfere with the rightful decision of the case."  *In re Phenylpropanolamine*, 460 F.3d

20  at 1227 (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990);

21  *Malone,* 833 F.2d at 131).  In this regard, "[f]ailing to produce documents as ordered

22  is considered sufficient prejudice."  *Id.*  While "[prejudice normally consists of loss of

23  evidence and memory, . . . [it] may also consist of costs or burdens of litigation,

24  although it may not consist of the mere pendency of the lawsuit itself."  In that regard,

25  the Court finds that Defendants have been prejudiced by Plaintiff's overall conduct in

26  this case, notwithstanding the Ninth Circuit's findings.  Indeed, in the context of

27  judicial estoppel, the Ninth Circuit found "insufficient evidence to support the claim

28  that [Defendants] were prejudiced by [Plaintiff's] behavior."  (Dkt. # 402 at 5.)  In

   doing so, the Ninth Circuit essentially concluded that Defendants had not been

prejudiced by Plaintiff's actions in bringing the trade dress infringement claim because Defendants were simultaneously "able to obtain evidence relevant to both false advertising and trade dress infringement." (*Id.*)  The Ninth Circuit, however, did not consider the prejudice Defendants may have suffered in the broader context of Rule 41(b), which is not limited to the single issue of discovery on trade dress infringement, but rather encompasses the time, expense, and effort expended in fighting Plaintiff's surreptitious actions throughout this entire case.  Thus, the Ninth Circuit's comments do not preclude a finding of prejudice to Defendants in the context of the entire litigation.

The fourth factor regarding the public's interest in disposition of cases on the merits weighs in favor of allowing Plaintiff's case to continue.  Finally, the fifth factor regarding the availability of less drastic sanctions also weighs in favor of Plaintiff.

While the Court finds that the first three factors strongly support dismissal, the Court also values disposition of cases on the merits and considers dismissal a drastic sanction.  After serious consideration, the Court finds disposition of this case on the merits so valuable that it **DENIES** Defendants Motion to Dismiss under Federal Rule of Civil Procedure 41(b).  The Court is mindful, however, that Plaintiff has received lesser sanctions in the past and understands that deterrence is one of the principal purposes of Rule 41(b).  Accordingly, in permitting this case to go forward, the Court wishes to make clear that it does not in any way condone the previous actions of Plaintiff's counsel and hereby issues a final warning.  Any further violation of the Federal Rules or any further attempt to assert a theory which has not already been presented will most likely result in dismissal of this entire action with prejudice.  This case will be limited to trade dress infringement ONLY and evidence presented must be relevant to the three elements to establish this cause of action as set forth below.  Plaintiff will not be permitted to present any other theories of unfair competition pursuant to the Lanham Act.

**B.** **Defendants' Motion for Summary Judgment Based on Equitable Estoppel**

Defendants argue  that Plaintiff should be equitably estopped from pursuing a trade dress claim because Defendants were prejudiced by Plaintiff's repeated bad faith representations that it was <u>not</u> pursuing a trade dress claim."  (Def.'s Mot. at 2.)  To establish equitable estoppel, Defendants must show that: (1) Plaintiff knew the facts; (2) Plaintiff intended that its conduct be acted upon or acted so that Defendants have a right to believe Plaintiff so intended; (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Plaintiff's conduct to their injury.  *See Operating Engineers' Pension Trust Fund v. Clark's Welding & Machine*, 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010) (citing *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)).

Because the Ninth Circuit found insufficient evidence of prejudice to Defendants in the context of their preparation of the trade dress infringement defense, Defendants cannot establish the fourth element.  Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment on the ground of equitable estoppel.  The Court will now turn its attention to the merits of Plaintiff's Motion for Summary Judgment, or in the alternative for Summary Adjudication of Issues.

**C.** **Plaintiff's Motion for Summary Judgment Based on Trade Dress Infringement**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides "two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')."  *Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1108 (9th Cir. 1992).  Here, Plaintiff abandoned any claim of false advertising and is left only with a claim of trade dress infringement. (*See* Dkt. # 212 at 5, # 325 at 3, # 402 at 8.)

"Trade dress involves the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales technique." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 n.1 (9th Cir. 2008) (quoting *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808 n.13 (9th Cir. 2003)).  To establish a claim for trade dress infringement, Plaintiff must prove that: (1) its trade dress is non-functional; (2) its trade dress is either inherently distinctive or has acquired secondary meaning; and (3) there is a likelihood of confusion between its trade dress and Defendants' box. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001).

Plaintiff claims that its trade dress is "the overall color of the box, the shading of the box, the texture of the shading, and the composition of the four Larin photographs and the fact that there are only four photographs, and how the four photographs are used and displayed." (Pl.'s Mot. at 6-7, 15.)  In essence, Plaintiff "defines its trade dress as the colors and content of the photographs on its box." (Mot. at 12.)

First, as to the functionality of Plaintiff's trade dress, Plaintiff has already conceded that the box itself is functional with respect to the shape. (Dkt. #212 at 9.) However, the Court previously found that "there is no dispute that the <u>design and photographs</u> on the boxes are nonfunctional." (*Id.* at 9.)  The parties assertions do not change this finding.

Second, "[a] likelihood of confusion exists when consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.'" *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (quoting *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993)). When products are related, but not in direct competition, courts usually apply an

1  eight-factor test to evaluate likelihood of confusion.[4]  *AMF, Inc. v. Sleekcraft Boats*,

2  599 F.2d 341, 348 (9th Cir. 1979); *Vision Sports, Inc. V. Melville Corp.*, 888 F.2d

3  609, 616 (9th Cir. 1989); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385,

4  1391 (9th Cir. 1993) ("The eight factor test applies when the products are related but

5  not in direct competition.").  On the other hand, when the allegedly infringing product

6  competes directly with the trademark owner's product, the likelihood of confusion is

7  found more readily, and generally depends upon whether the products' marks are

8  confusingly similar, without consideration of all the factors.  *Lindy Pen Co., Inc. v.*

9  *Bic Pen Corp.*, 796 F.2d 254, 255 (9th Cir. 1986).  In its previous Order, the Court

10  described Plaintiff's evidence of actual confusion and stated that summary judgment

11  was improper with respect to this requirement.  (*See* Dkt. #212 at 8.)  That conclusion

12  stands.

13  　　　Third, Plaintiff must establish that its trade dress is inherently distinctive or has

14  secondary meaning.  Plaintiff contends that if Defendants intentionally copied

15  Plaintiff's trade dress, there is a presumption of secondary meaning.  (Pl's Mot. at 8.)

16  Alternatively, Plaintiff asserts that because its trade dress is inherently distinctive, it

17  need not establish secondary meaning.  (Pl.'s Mot. at 7.)

18  　　　As to Plaintiff's intentional copying argument, it is true that "proof of

19  intentional copying supports an inference of secondary meaning."  *Vision Sports*, 888

20  F.2d at 615; *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir.

21  1987); *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th

22  Cir. 1985) ("Proof of exact copying, *without any opposing proof*, can be sufficient to

23  ──────────────────

24  　　　[4] These factors are: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3)

25  the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the

26  degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in

27  selecting the mark; and (8) the likelihood of expansion into other markets." *KP Permanent Make-Up,*

28  *Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005) (citing *Sleekcraft*, 599 F.2d at

　348-49).

establish secondary meaning." (emphasis added)).  In its previous Order, the Court found that Plaintiff had "not made a definite showing of intentional copying," (Dkt. # 212 at 7), and thus it was not entitled to summary judgment on this issue.  Conversely, the Court previously found that Plaintiff provided enough evidence to survive summary judgment on this issue.  (*See id.*)  These conclusions have not changed.

Moving to Plaintiff's assertion that its tress dress is inherently distinctive, for Plaintiff to establish inherent distinctiveness, it must show that "[its] intrinsic nature serves to identify a particular source."  *WalMart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, No. SACV09-1148, 2010 WL 3835673, at *5 (C.D. Cal. Sept. 30, 2010).  In other words, Plaintiff must show that its trade dress is so "unique, unusual, or unexpected in this market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin."  *Fiji Water Co.*, 2010 WL 3835673, at *5 (quoting *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977)).  In determining whether Plaintiff has satisfied this requirement, the Court may look to:

> (1) whether the design is a common, basic shape or design, (2) whether it was unique or unusual in a particular field, (3) whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or (4) whether it was capable of creating a commercial impression distinct from the accompanying words.

*Id.* at *5.

Plaintiff claims that its trade dress is distinctive "overall, in its use of colors and photographs." (*Id.* at 16.)  Specifically, Plaintiff alleges that the Larin box "was colored a blueing grey that faded from light to dark . . . [and] displayed four (4) pictures," including a man sitting on the stool working on a motorcycle in a room, a

man working on his car in the driveway in front of his garage, and a social bar scene where women are sitting on stools in front of a bar.  (*Id.*)  Defendants counter that Plaintiff's box is not "so unique, unusual, or unexpected in the market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin."  Rather, Defendants contend that Plaintiff's box is "a standard size, with a standard color, with standard application shots arranged in a standard fashion."  (Def's Opp'n at 12.)  The Court has considered these arguments and the factors set forth above and finds that whether Plaintiff's trade dress is inherently distinctive is a disputed issue of material fact.  Thus, summary judgment on this requirement is improper.

In sum, while Plaintiff has established the non-functional nature of its trade dress, there are disputed issues of material fact as to both likelihood of confusion and inherent distinctiveness.  Thus, Plaintiff's Motion for Summary Judgment is **DENIED**.

### D.      Plaintiff's "Implied Palming Off" Theory

The Court will now address Plaintiff's theory of "implied palming off," which was first presented in the instant Motion for Summary Judgment.  (Pl.'s Mot. at 13-14.)  In doing so, the Court **GRANTS** Defendants' Ex Parte Application to file a Sur-Reply and considers arguments set forth in Defendants' Sur-Reply (Dkt. # 453-3) and Plaintiff's Response to Defendants' Sur-Reply (Dkt. # 456).  To the extent that Plaintiff asserts a new claim for "palming off," it is estopped from doing so because the "palming off" claim was not included in the April 11, 2008 pretrial conference order, which is sufficient to exclude it.  F.R.C.P. 16(e); *see also Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action.").  Further, this new claim would require a detailed examination of the Larin and AllTrade stools themselves.  Because Plaintiff's counsel

has already represented to Defendants and to the Court that this case will focus on the boxes (*see* Dkt. # 453-4 ¶ 3), not the individual stools, allowing a new claim to go forward at this stage of the litigation is not appropriate.

If, however, Plaintiff wishes to use evidence of "palming off" to support the likelihood of confusion element of its trade dress infringement claim, it will be permitted to do so.  *See* MCCARTHY ON TRADEMARKS § 8:19 ("if defendant admits that he used plaintiff's package as a model to copy from in designing his own package, this does not always mean that defendant intentionally was passing off his product as plaintiff's.  Such an admission is merely evidence relevant to the ultimate test of likelihood of confusion.").  If Plaintiff chooses to offer such evidence, it is instructed to be mindful of  the evidence's limited purpose.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41, or in the alternative for Summary Judgment, is **DENIED**. Likewise, Plaintiff's Motion for Summary Judgment, or in the Alternative, for Summary Adjudication of Issues, is **DENIED**.

IT IS SO ORDERED.

January 5, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE